## CAMPANELLI v. UNITED STATES.

(Circuit Court of Appeals, Ninth Circuit.
July 12, 1926.)

No. 4568.

**1. Conspiracy ⟨key⟩47.**

Evidence *held* to sustain conviction, under Penal Code, § 37 (Comp. St. § 10201), for conspiracy to import liquor, in violation of National Prohibition Act (Comp. St. Ann. Supp. 1923, § 10138¼ et seq.).

**2. Criminal law ⟨key⟩372(2)—Evidence relating to accounts and settlements for liquor in previous transactions between defendant in liquor conspiracy case and another held admissible (Penal Code, § 37 [Comp. St. § 10201]; National Prohibition Act [Comp. St. Ann. Supp. 1923, § 10138¼ et seq.]).**

Where evidence showed general combination to import liquor, in violation of National Prohibition Act (Comp. St. Ann. Supp. 1923, § 10138¼ et seq.) and Penal Code, § 37 (Comp. St. § 10201), *held*, that evidence relating to accounts and settlements for liquor in previous transactions between defendant and another was admissible.

**3. Criminal law ⟨key⟩1169(7)—Defendants in liquor conspiracy case held not prejudiced by admission of evidence that codefendant bought coal for boat seized while unloading liquor (Penal Code, § 37 [Comp. St. § 10201]; National Prohibition Act [Comp. St. Ann. Supp. 1923, § 10138¼ et seq.]).**

In prosecution under Penal Code, § 37 (Comp. St. § 10201), for conspiracy to import liquors in violation of National Prohibition Act (Comp. St. Ann. Supp. 1923, § 10138¼ et seq.), defendants *held* not prejudiced by admission of evidence that codefendant bought coal for boat seized while unloading liquor.

**4. Conspiracy ⟨key⟩45—On trial for conspiracy to import liquor, admission of testimony that defendant had account in trust company showing large deposit held not error (Penal Code, § 37 [Comp. St. § 10201]).**

On trial for conspiracy, under Penal Code, § 37 (Comp. St. § 10201), to import liquor, admission of testimony that defendant had account in trust company showing large deposits *held* not error, in view of testimony that defendant collected large sums for liquor, which he deposited to his account.

**5. Criminal law ⟨key⟩1169(7).**

On trial for liquor conspiracy, under Penal Code, § 37 (Comp. St. § 10201), defendant *held* not prejudiced by admission in evidence of unsigned letter addressed to him, found on codefendant, where court directed jury not to consider it.

**6. Criminal law ⟨key⟩1169(7).**

Admissions at time of arrest *held* admissible against conspirators who made them, and not prejudicial to other defendants, where court instructed jury not to consider admissions against persons not making them.

**7. Criminal law ⟨key⟩1122(5).**

Where bill of exceptions showed no requested instructions as refused, assignment of error that requested instructions were refused presented nothing for review.

In Error to the District Court of the United States for the Southern Division of the Northern District of California; Robert S. Bean, Judge.

Guiseppi Campanelli and another were convicted of conspiracy to violate the National Prohibition Act, and the defendant named brings error. Affirmed.

Wilford H. Tully, of San Francisco, Cal., for plaintiff in error.

Geo. J. Hatfield, U. S. Atty., and T. J. Sheridan, Asst. U. S. Atty., both of San Francisco, Cal.

Before GILBERT, RUDKIN, and HUNT, Circuit Judges.

HUNT, Circuit Judge. Plaintiff in error and 23 others were indicted for conspiracy (section 37, Penal Code [Comp. St. § 10201]) to violate the National Prohibition Act (Comp. St. Ann. Supp. 1923, § 10138¼ et seq.), in that about February 1, 1924, and continuously up to October 8, 1924, at San Francisco, they combined to sell, transport, import, and deliver intoxicating liquor into the United States. Overt acts charged were that at Havana, Cuba, in July, 1924, certain of the defendants caused the steamer Guilia to be loaded with liquor, and to leave Havana, and go to a point less than 30 miles from the Farallone Islands, off the coast of California, with the intent to introduce the liquors into the United States, and that defendants delivered a portion of the liquor to the Gnat and other motorboats, intending that the liquor should be brought to the United States at San Francisco Bay. Deliveries to other boats at other times are also charged.

Campanelli, referred to as defendant, and O'Hagan, master of the Guilia, were convicted. Campanelli brought writ of error, and contends that there was a material variance between the indictment and the evidence, that testimony was improperly admitted, and that certain requests for instructions were erroneously refused.

[1] The evidence in support of the averments of the indictment was ample to show that in 1923 defendants Henderson and McMillan, and another, who was not indicted, associated together and frequented the office of the Columbo Mining Company in San Francisco; that through that association Campanelli met the group; that Campanelli visited Henderson at his apartment in San

Francisco; that at San Francisco, early in 1924, Henderson told Campanelli of a plan to go to Cuba to obtain liquor; that the ship Guilia was to proceed to Havana, there to load liquor to be brought to California; that in April, 1924, Campanelli, accompanied by Henderson and another defendant, went to Havana, where Henderson showed Campanelli a warehouse in which Henderson kept liquor, which he told Campanelli was imported from Scotland; that, after the Guilia arrived at Havana, Campanelli helped load her with approximately 8,500 cases of liquor; that, about three weeks after his return to San Francisco, Henderson and Campanelli met at a hotel, where it was agreed that Campanelli should receive from Henderson $1 a case for his assistance in disposing of liquor deliveries by the Henderson interests in California; that, after the arrival of the Guilia off the Farallone Islands, Campanelli hired one of the boats upon which liquor was transported from the Guilia to the shore. There was also evidence that, pursuant to an arrangement between Henderson and Campanelli, financial settlements were had for liquor unloaded from the Guilia.

[2] As the evidence showed a general combination to import liquor, and that it was understood that Campanelli was to receive commissions for unloading liquor delivered by the Henderson interests in California, there was no error in admitting testimony tending to show that during 1923 and 1924 Henderson and Campanelli had accounts and settlements between themselves for liquors transported to the shore at or near San Francisco from another ship, the Ardenza, which, with her cargo of liquor, Henderson claimed to own. Ford v. United States (C. C. A.) 10 F. (2d) 339.

[3] Defendants were not prejudiced by the admission of testimony that in December, 1923, McMillan, a codefendant, bought coal for the Mae Heyman, a boat, which on the night of April 10, 1924, was seized while unloading a cargo of liquor at San Francisco. The liquor seized was described by a prohibition agent as in pint bottles, with a heavy wrapper, in regular sacks, sewed tight on the end, "just like smuggled Scotch would come in the same way." It was not an unreasonable inference that the ship and cargo had relation to the conspiracy charged and the execution thereof.

[4] Over the objection and exception of Campanelli, the court admitted testimony of the manager of a trust company in San Francisco that Campanelli had an account in the bank from July, 1923, to August 28, 1924, showing deposits of about $157,000. Such testimony became competent, in connection with other evidence that Campanelli stated that, at the suggestion of Henderson, he (Campanelli) collected for liquors delivered, and, pursuant to Henderson's advice, deposited moneys to his credit.

[5] When the defendant O'Hagan was arrested, the officers took from him a registry and other papers, including an unsigned letter, addressed to Campanelli at San Francisco. The letter was admitted in evidence, but the court afterwards withdrew it from the consideration of the jury, with the specific direction that it should not be considered as against Campanelli or any defendant. We are of opinion that there was no prejudice to defendant's rights. Some other papers found in possession of O'Hagan were admitted only as against O'Hagan. As to him they were competent. Campanelli, therefore, cannot complain of the ruling.

[6] At the time of the arrest of two defendants, Daniels and Rodney, they made statements which upon the trial were admitted over the objection of Campanelli. The statements contained admissions, which not only had to do with defendants Daniels and Rodney, but had reference to other defendants. As against the defendants who made the admissions, the evidence was competent, and to protect other defendants the court carefully advised the jury that the statements were evidence only against Daniels and Rodney, "and not anybody that they mentioned in the statements."

[7] Defendant argues that the court erred in refusing several requests for instructions. The assignments included certain requests as refused, but, as the bill of exceptions does not contain any requests as refused, there is nothing for review. "It is not sufficient to insert in an assignment of errors requested instructions which do not in the bill of exceptions appear to have been requested." Feigin v. United States (C. C. A.) 279 F. 107. The charge of the court, which is included in the record, was very fair to defendant and covered all points which involved his substantial rights.

The record satisfies us that the defendant had a fair trial, and that his rights were in no way prejudiced.

The judgment is affirmed.