Commonwealth *v.* Kauffman, Appellant.

446

Argued June 11, 1959. Before RHODES, P. J., WRIGHT, WOODSIDE, ERVIN, and WATKINS, JJ. (HIRT and GUNTHER, JJ., absent).

*Irving R. Shull,* for appellant.

*Juanita Kidd Stout,* Assistant District Attorney, with her *Victor H. Blanc,* District Attorney, for appellee.

OPINION BY RHODES, P. J., September 16, 1959:

The defendant, Joseph Kauffman, was tried in the Municipal Court of Philadelphia and convicted upon five bills of indictment each charging him with embezzlement and fraudulent conversion. The indictments were tried together by a judge sitting without a jury. On one of the indictments, No. 6, April Sessions, 1957, defendant was sentenced to a term of not less than two years nor more than four years in the Eastern State Penitentiary, his motions for new trial and in arrest of judgment having been refused. On the other indict-

ments, Nos. 7, 8, 9, and 10, April Sessions, 1957, sentence was suspended. Defendant appealed to this Court.

Defendant asks that he be discharged or that he be granted a new trial, and contends: (1) That the indictments were barred by the statute of limitations, (2) that the Commonwealth did not establish his guilt beyond a reasonable doubt, and (3) that the trial judge oversimplified the issues in the case and denied him the opportunity to adequately present his defense.

The charges against defendant arose out of his employment. The private prosecutor, M. Jennings and Sons Company, a corporation, engaged defendant as a manager and superintendent of sales from December, 1953, until October, 1954. The company conducts a fuel, heating equipment, and home improvement business in Philadelphia. In the course of his employment, defendant collected certain sums from customers which admittedly were not paid over to the company. The five indictments represent four customer transactions.[1]

---

[1] The following table indicates, by the indictments, the funds which were paid to defendant by customers of the company; the funds which defendant turned over to the company; the funds which were not paid to the company or were paid to the company by defendant's personal checks which were returned dishonored for insufficient funds:

| Indictment | Customer | Amount paid to defendant | Amount defendant turned over to company | Amount retained by defendant |
|---|---|---|---|---|
| No. 6 | Fioravanti | $ 450 | $ 200 cash | $ 250 (a) |
| No. 7 | Hoptroff | $ 350 | $ 100 cash | $ 250 (b) |
| Nos. 8, 9 | Barrish | $ 530 | $ 100 cash | $ 150) |
| | | | | $ 280) (c) |
| No. 10 | Brenner | $ 480 | $ 200 cash | $ 280 |

(a) Defendant gave the company a bad check for $200 of this amount.

(b) Defendant gave the company a bad check for this amount.

(c) Defendant gave the company a bad check for $300 of this amount.

In one of the transactions defendant paid part of the funds received from the customer to the company in cash, and the balance by a check which failed to clear his bank by reason of insufficient funds. In three instances involving two customer transactions, defendant paid part of the funds to the company in cash, part by checks which were returned because of insufficient funds, retaining or using the balance. In one transaction defendant paid part of the amount received from the customer in cash and failed to pay the balance.

All of the transactions involved in the indictments occurred in 1954. The indictments were returned on April 1, 1957.

Defendant first contends that the general criminal statute of limitations, Act of April 6, 1939, P. L. 17, §1, 19 PS §211, amending the Act of March 31, 1860, P. L. 427, §77, is applicable, and that the indictments are barred because they were returned more than two years after the alleged offenses. The Commonwealth contends, however, and the court below determined, that the limitation of six years prescribed by the Act of May 16, 1945, P. L. 582, §1, 19 PS §213, was applicable, and that the indictments were therefore timely.

The amendatory Act of 1945, No. 238, 19 PS §213, provides: "Indictments for felonies or misdemeanors committed by any officer, . . . superintendent, manager, . . . agent, employe . . . of any bank, body corporate or public company, . . . may be commenced and prosecuted at any time within six years from the time the alleged offense shall have been committed. The provisions of this section shall not be construed so as to apply to indictments for any felony or misdemeanor other than those as to which any of the foregoing relationships to a bank, body corporate or public company . . . is an essential element of the crime." The six-year limitation provided by the Act of 1945 is applicable only when the

named relationship to the body corporate or public company is an essential element of the crime. *Com. v. Parish,* 176 Pa. Superior Ct. 267, 269, 107 A. 2d 203.

Defendant was indicted for the crimes of embezzlement and fraudulent conversion. One form of embezzlement is defined by section 827 of the Act of June 24, 1939, P. L. 872, 18 PS §4827, which provides: "Whoever, being an officer, director, superintendent, manager, receiver, employe, agent . . . of any bank or other body corporate, or public company . . . fraudulently takes, converts, or applies to his own use, or the use of any other person, any of the money or other property of such bank, body corporate or company, . . . or belonging to any person or persons, corporation or association, and deposited therein, or in possession thereof, is guilty of embezzlement, a felony, . . ." It is obvious that the relationship of superintendent, manager, agent, or employe of a body corporate or public company is an essential element of the crime as defined by the statute under which defendant was indicted. Anyone who did not stand in one of the enumerated relationships to a corporation could not be convicted under this section; clearly the six-year limitation applies. In *Com. v. Parish,* supra, 176 Pa. Superior Ct. 267, 270, 107 A. 2d 203, 205, we said, speaking of the additional time limitation provided by the Act of 1945: "This obviously refers to such crimes as embezzlement where the corporate capacity of the accused is part of the nature of the crime. . . . The purpose of this six-year provision is to give enforcement agencies more time to apprehend those who are in a peculiarly good position to conceal their crimes for periods longer than the average criminal. . . ."

The crime of fraudulent conversion as defined by section 834 of the Act of June 24, 1939, P. L. 872, 18 PS §4834, however, does not require as an essential

element of the crime any of the specific relationships to a body corporate or public company enumerated in the Act of 1945. Under section 834, 18 PS §4834, it is a crime to fraudulently convert money or property which is held in "any capacity or by any means or manner." Unlike embezzlement, it is not essential under this section that the defendant have some relationship to a corporation. In *Com. v. Wooden*, 94 Pa. Superior Ct. 452, 455, 456, this Court recognized a distinction when referring to the previous criminal laws from which the present sections on embezzlement and fraudulent conversion are derived. We there said (page 456 of 94 Pa. Superior Ct.) : "It is true that under this act [the predecessor to section 827, 18 PS §4827—embezzlement] an officer or an employee of a corporation may be indicted for the fraudulent conversion of property belonging to any person or corporation, deposited in or in the possession of, the corporation of which he is an officer or employee. It will be noted that an essential element of the offense punishable under this act is possession of the property by the corporation of which the converter is an officer or employee. Possession of property by an officer or employee is not necessarily a possession by the corporation. But, under the Act of 1917 [the predecessor to section 834, 18 PS §4834—fraudulent conversion] possession by the corporation of the property converted is not an essential element of the offenses when one of its officers or employees is charged with fraudulently converting property received by him as an officer or employee of that corporation. Under that act possession by one as an individual or in any capacity is sufficient." However, the crimes of embezzlement and fraudulent conversion, as defined in The Penal Code of 1939, are so closely related that the distinction in this case is largely academic from the standpoint of the statute of limitations. The act of fraudu-

lent conversion, which alone would be sufficient for conviction under section 834, 18 PS §4834, is one of the elements of the crime of embezzlement under section 827, 18 PS §4827. Since the relationship of the accused to the corporation is essential to conviction of embezzlement, though not necessarily essential to conviction of fraudulent conversion, the indictments were timely in so far as they charged the crime of embezzlement.

Defendant next argues that his guilt was not established beyond a reasonable doubt. As we have indicated, section 827 of The Penal Code, 18 PS §4827, makes it a crime for certain enumerated officers or employes of corporations to fraudulently take, convert, or apply any money or other property to their own use or the use of any other person. The gravamen of the offense is the withholding of the property of another with the intent to defraud that other, or to deprive him of the use and benefit thereof, and to convert or apply the same to the defendant's own use or benefit, or the benefit of some other person. See *Com. v. Stahl*, 183 Pa. Superior Ct. 49, 52, 127 A. 2d 786; *Com. v. Wooden*, supra, 94 Pa. Superior Ct. 452, 457. Defendant freely admitted that he had received the sums stated in the indictments from the customers of the company; that the funds, at least in part, were deposited in his own account; and that he gave bad checks to the company for part of the funds. Defendant claimed, however, that the funds were used by him in the course of the company's business to pay subcontractors, though not necessarily those involved on the jobs concerned in these indictments, and other creditors of the company. The amounts alleged to have been so paid by defendant totaled approximately $1,700.

Under the circumstances, the issue became whether defendant had fraudulently converted the funds collected or whether he had applied them in the course of

the business under the belief that he was authorized to do so. It was a defense somewhat related to a claim of right, an assertion by the defendant that he withheld or used the funds in good faith believing that he had the right to do so. *Com. v. Samuels,* 175 Pa. Superior Ct. 560, 569, 107 A. 2d 197; *Com. v. Wiener,* 340 Pa. 369, 375, 17 A. 2d 357. The question is not simply whether defendant actually had such right or authority, but whether he held a bona fide belief in that respect. *Com. v. Meinhart,* 173 Pa. Superior Ct. 495, 500, 98 A. 2d 392; *Com. v. Samuels,* supra, 175 Pa. Superior Ct. 560, 569, 107 A. 2d 197. Of course, if the defendant did not have such belief but simply claimed the ability or intention to repay the funds, his actions would not be justified. *Com. v. Bovaird,* 373 Pa. 47, 59, 95 A. 2d 173.

In support of this defense, canceled checks were produced which were allegedly paid to subcontractors or other creditors of the company. The only witness for the prosecution, Albert E. Miller, president and treasurer of the company, while generally denying that defendant was authorized to deposit funds in his own account and to make such payments, did admit that some of the checks of defendant were paid to persons who were known to him to be subcontractors. The witness identified twenty-nine such checks, but stated that he did not know whether they had been paid on behalf of the company. Miller also testified that defendant had made deposits in his own account and given his checks therefor "a number of times."

The nature of defendant's relationship with the company is significant. Miller stated that defendant's employment was more extensive than that of a sales manager. One of the functions of defendant was to extend the business of the company into the new field of home improvement, and in this connection he arranged

to obtain the subcontractors necessary to perform the work. Miller also said that defendant was considered an associate in the business, that defendant had an option to purchase stock, and that defendant "was considered by the people in the office to be the boss."

Where the issue is merely one of credibility we ordinarily do not disturb the determination made by the trier of fact. If such were this case, the conviction might be sustained on the basis of the evidence that defendant had received funds on behalf of the company which he failed to remit and which he admitted depositing to his own account. But the defense raised the question of the claim of right and produced in addition to the testimony of defendant certain documentary evidence in the form of his canceled checks payable to persons identified as subcontractors of the company. Significantly, the defense was strengthened, at least in part, by the statements of the prosecuting witness to the effect that defendant was considered an associate in the business, in the nature of the boss; that defendant had deposited funds in his account on previous occasions, remitting them to the company by his personal checks; and that some of the checks offered in evidence by defendant were payable to persons who were subcontractors of the company. As the prosecuting witness denied that defendant had authority to remit funds to the company by his personal checks or to pay subcontractors and creditors of the company, the inquiry should naturally have turned to other evidence, such as the records of the company, to determine whether a course of conduct was established between the company and defendant demonstrative of this authority either explicit or implied.

This aspect of the case was sufficiently important to warrant more endeavor toward certainty before conviction than mere acceptance of the general denial of

the prosecuting witness. This is especially true in view of the documentary evidence introduced by defendant. Such would tend to establish his authority, or foundation for a reasonable belief that such authority existed, when coupled with his explanation and the important, though limited, concessions made by the prosecuting witness.

Unfortunately the trial court appears to have oversimplified the issue; consequently, it did not direct its inquiry to a full determination of the nature and extent of the relationship between the company and defendant or of his authority respecting funds of the company as that authority may have been established explicitly, tacitly, or by a course of conduct. In the course of the trial the court declared its interest in only one issue,—"a simple issue; and that issue is whether the customers had paid money over to Mr. Kauffman that he has not turned in to this company." While some latitude was allowed defendant in presenting his case, the court obviously was of the impression that these efforts were but "labored attempts . . . to becloud the issue." In the interest of justice, the case must be retried so that the facts may be fully presented and the issues fairly determined.

Judgment of sentence and convictions are reversed, and a new trial is granted.