Commonwealth v. Burns, Appellant.

Argued March 19, 1962. Before RHODES, P. J., ERVIN, WRIGHT, WOODSIDE, WATKINS, MONTGOMERY, and FLOOD, JJ.

*Vincent M. Casey,* with him *Arnold D. Smorto,* and *Margiotti & Casey,* and *Smorto & Creany,* for appellant.

*Ferdinand F. Bionaz,* District Attorney, with him *W. Louis Coppersmith,* Assistant District Attorney, for Commonwealth, appellee.

OPINION BY ERVIN, J., June 12, 1962:

The appellant, Frank Joseph Burns, was convicted by a jury under 13 bills of indictment, each charging the crime of embezzlement under §822 of the Act of June 24, 1939, P. L. 872, 18 PS §4822, which reads as follows: "Whoever, being an officer, employe or agent of this Commonwealth, or political subdivision thereof, charged with the collection, safekeeping, transfer or disbursement of public money, converts to his own use, in any way whatsoever, or uses by way of investment, in any kind of property or merchandise, any portion of the public money entrusted to him for collection, safekeeping, transfer or disbursement, or proves a defaulter, or fails to pay over the same when thereunto legally required by the person authorized to demand and receive the same, or aids or abets or is an accessory to any such act, is guilty of embezzlement, a felony. . . ."

Defendant had been superintendent of the Cambria County Home for the Aged for many years prior to and including the years 1957, 1958 and 1959, which were the years covered by the 13 indictments. It was the policy of the county to require such patients at the County Home as were financially able to reimburse the county either in whole or in part for the cost of their care and maintenance. According to the testimony of one of the county commissioners it was defendant's duty, as superintendent, to investigate whether patients were able to pay and if so, how much. He was to determine ability to pay, to make a charge accordingly, and he had also been given authority to collect these

support payments from the patients and turn them in to the office of the county treasurer, who was likewise the treasurer of the Cambria County Institution District under which the County Home operated. The Commonwealth proved and defendant later admitted that during the three years covered by the bills of indictment he collected for the use of the county from the 13 patients referred to in the 13 bills of indictment the sum of $9,560.00 and that of this sum he transmitted to the county treasurer the sum of $3,390.00, leaving the sum of $6,170.00 paid by the patients for the use of the county but not paid over by defendant to the county treasurer. Defendant took the witness stand, admitted having received the amount of money alleged by the Commonwealth and his failure to turn over $6,170.00 to the county treasurer. His defense was that he did not convert this sum of money to his own use although he admitted having deposited it in his personal checking account out of which he drew checks for his own purposes. He contended that he used none of the money collected from the patients for his own purposes but spent it for the benefit of the patients in purchasing for them extra clothing, tobacco, cigars, candy, etc., and for the use of the county for such items as disinfectants, mattresses, furniture, shrubbery, floor finishing, and many other items which the county otherwise would have been required to purchase out of other county funds.

Counsel for appellant first contends that he was not an officer or employe charged with the collection, safe-keeping, transfer or disbursement of public money and that the judgment of conviction should have been arrested. While §822 uses the language "charged with" it is important to note that the words "by law" are not contained anywhere in the section. The evidence clearly reveals that the county commissioners had charged Burns, as superintendent of the County Home, with the

collection of the support payments from the patients and had directed him to turn it over to the county treasurer. When collected from the patients the money became public money.

Certain courts take the position that statutes providing for the collection of public money are penal and therefore should be strictly construed. Other courts have emphasized the necessity of construing such statutes broadly enough to serve the public purpose of protecting the public interest. In this connection we repeat with approval what was so well said by President Judge GEORGE W. GRIFFITH for the court below: "The first position is exemplified by the case of State of Nebraska v. Boatman, 7 N.W. 2d 159, wherein the court said that a deputy or a clerk in the County Treasurer's office may not be prosecuted under the statute prohibiting the embezzlement of public moneys because he was not 'charged by law' with the duty of collecting and disbursing such moneys. This court was of the opinion that only such persons who were designated by a statute to have charge of public moneys were amenable to prosecution. In its opinion, the court called attention to the fact that the State of Ohio had a similar statute and in the case of State v. Meyers, 47 N.E. 138, its courts came to a similar conclusion. Defendant also calls our attention to Ex Parte Huston, 147 P. 1064, and State v. Bolin, 110 Mo. 209, 19 S.W. 650. In the latter case, however, the defendant was neither charged by statute nor by any appointing power to collect the public moneys but obtained possession thereof by falsely representing that he had such right.

"On the other hand, the point of view of those courts which find that it is not necessary that a defendant charged with the embezzlement of public funds be so charged by statute was expressed by the Supreme Court of Indiana in the case of Kops v. State, 42 N.E. 2d 58, as follows: 'It would be unthinkable to hold that only

officers charged *by law* with the collection, safekeeping, transfer, etc., could be guilty of embezzling public funds.' (Emphasis supplied)

"Also in State v. Clerkin, 58 Conn. 98, 19 A. 517, the court held that such a statute was applicable to one employed by the selectmen of a town although the office which he held was not specifically authorized to collect public moneys by statute. Likewise in People v. Lester, 21 C.A. 2d 450, 69 P. 2d 467, the court found that a deputy city clerk duly appointed by the commissioner of finance to act as a license clerk and collector was 'at least a de facto officer, and so to be within the terms of the statute'. In State v. Exnicios, 33 La. Ann. 253, it was held that a clerk employed by the administrator of finance of the City of New Orleans was within the purview of a statute providing for the punishment of 'any officer or other person charged, with the collection, receipt, etc. of public money.'

"The general rule is set forth in 18 Am. Jur. 596, Embezzlement, Sec. 40, as follows: 'In order to authorize the conviction of a public officer for embezzlement, it must usually be shown: (1) That the accused is a public officer or occupies a fiduciary relation; (2) that the money or property which he is charged with appropriating to his own use came into his possession by virtue of his office or employment; and (3) that he embezzled or fraudulently converted it to his own use.'

"These three requisites are present here.

"a. Under our criminal statute an accused need not be a public officer because employees are specifically mentioned in the statute. Moreover, defendant occupied a fiduciary relation in that he collected county moneys from patients for the purpose of transmitting the same to the County Treasurer.

"b. There can be no question that the money which he was charged with appropriating to his own use came into his possession by virtue of his office or employment.

"c. The Commonwealth produced ample testimony that he embezzled or fraudulently converted such money to his own use.

"In the case of Springer v. State, 196 N.E. 97, the Supreme Court of Indiana sustained the conviction of the Superintendent of the County Hospital on a charge of embezzling money paid by the patients for board. Defendant in that case had been appointed Superintendent of the County Hospital by a Board of Trustees who in turn had been appointed by the County Commissioners. The court held that defendant was a person charged and entrusted with the collection and safekeeping of the payments for board made by the patients although not specifically given such authority by statute.

"In Com. v. Smith, 116 Pa. Superior Ct. 134, 143, a school board appointed the defendant to collect delinquent taxes. Defendant was prosecuted for embezzlement under the Act of June 12, 1878, P. L. 196. The court said that the absence of statutory authority in the school board to appoint defendant as its agent was not a defense to the charge of having embezzled the money received as such agent. In this case, as in the one before us, the defendant was not charged by statute with the collection of public moneys but he was charged with their collection by the authority which appointed him; in that case the school board, in this case, the County Commissioners.

"Although defendant's office of Superintendent of the Cambria County Home was not specifically charged by statute with the collection of public money, we are satisfied that he was so charged by virtue of his designation to collect such money by the action of the County Commissioners."

Appellant's counsel next argues that there was no evidence that the appellant had embezzled by converting to his own use public moneys. Burns took the

stand in his own defense and frankly admitted that during the three years involved, 1957, 1958 and 1959, he had collected for the use of the county from the 13 patients referred to in the 13 bills of indictment the sum of $9,560.00 and that of this sum he transferred to the county treasurer the sum of $3,390.00, leaving the sum of $6,170.00 not paid over by the defendant to the county treasurer. His defense was that he did not convert this sum of money to his own use but had expended it for the benefit of the patients and the county as hereinbefore indicated. The Commonwealth proved that during the three years involved Burns had deposited in a bank account the sum of $45,689.70. In October 1959 there was no balance in this account, it having been closed out. The Commonwealth also proved that during the three years involved Burns and his wife had deposited in a savings account the sum of $4,686.50. On January 1, 1957 this savings account had a balance in it of $15,213.43. On December 1, 1959 the balance in this account was $21,008.81. Burns produced cancelled checks and receipted bills to show that during the three years involved he had spent the sum of $24,035.74 for the benefit of the patients and the county and that these sums had come out of a tin box where he kept some of the patients' cash and out of the above mentioned checking account.

Burns also testified that the only people from whom he withheld money for room and board were the ones for whom indictments were charged. It must be recalled that Burns was charged only with embezzlement of the sum of $6,170.00 in the 13 indictments upon which he was convicted. When it was pointed out to him in cross-examination that he had spent approximately $24,000.00 to cover approximately $6,000.00 of shortage, his explanation was: "You must remember that these contributions were not entirely confined to 1957 but they would go back into previous years. Q. Are

you now saying that you had a reserve at the beginning of 1957 of approximately $16,000.00? A. I had a running reserve, if you'd call it such. Q. How much was this running reserve? A. That I could not tell you."

Burns also frankly admitted that he deposited in the above mentioned checking account his own money and paid his own personal bills therefrom. He could not tell how much of his own money he had deposited in the checking account nor how much he had used for the payment of his own bills. He also admitted that he operated a canteen at the County Home and that some of the purchases covered by the above mentioned checks and cash receipts were for the canteen. He also said that some of the canteen money was deposited in the checking account but he could not tell the jury how much. The canteen operation was not reported to the county nor was it subject to audit by the county controller. How much of the purchases went into the canteen and how much went to the patients free of charge he was unable to tell. The evidence revealed that Burns had had a black ledger in which he kept the accounts of these patients. When he was asked to produce it, he said it was missing and he did not know where it was. If this black ledger had been produced it might have provided some of the answers to the above questions. It must have been extremely difficult for the jury to believe that this man would expend approximately $24,000.00 when he had received from the patients approximately $6,000.00.

Burns also testified that there were many more patients who had received checks from private pensions, social security, blind pensions, etc., than the 13 people involved in these indictments. He admitted that for the years previous to 1957 he collected money from other patients than those involved in these 13 indictments and that he had a running reserve of these moneys. He did not know how much was in that re-

serve. He admitted that he once had records showing how much had been collected from each patient but he did not know where those records were at the time of trial. We think that the jury could properly infer that Burns had collected from many other patients than those involved in these 13 indictments.

Appellant's entire defense rests largely upon his own story and therefore his credibility is involved. We quote with approval what was said by President Judge RHODES in *Com. v. Kauffman*, 190 Pa. Superior Ct. 444, 453, 154 A. 2d 269: "Where the issue is merely one of credibility we ordinarily do not disturb the determination made by the trier of fact. If such were this case, the conviction might be sustained on the basis of the evidence that defendant had received funds on behalf of the company which he failed to remit and which he admitted depositing to his own account."

The admission by Burns that he had collected the moneys as charged by the Commonwealth; that he did not turn in the money to the county; that he had commingled it in his own checking account with his own funds; that he paid out of this checking account his own bills as well as bills for the patients and county, should alone be sufficient to sustain the conviction of Burns on these 13 indictments. There were many other circumstances proved to buttress this conviction. Some of these circumstances are the fact that Burns by his own admission did not inform anyone, including the proper county authorities, of any expenditures allegedly made for the patients or for the county, the first knowledge of which came at the trial, nine months after the formal charges had been filed; the fact that purchases which appellant claimed were made for county purposes were, in many instances, discovered to have been made for canteen purposes, no account of this operation having been made; the fact that many of the purchases which he says were made could have been

made out of available budgetary allocations for such purposes by the institution district; the fact that Burns during the three years involved had deposited in the bank account $45,689.70 and in the savings account $4,686.50, making a total of $50,376.20, whereas during the same three-year period the net take home pay of himself and wife was $14,513.01; that during the same three-year period Burns had deposited in another savings account in the Johnstown Savings Bank the sum of $5,477.00; that during the same three-year period he had purchased a Lincoln automobile, two Cadillacs and a Thunderbird; that during the same three-year period he had purchased stock worth $3,746.04 and paid for it out of the patients' checking account; that within two months subsequent to the last indictment he and his wife had purchased a home for which they paid the sum of $25,000.00 in cash; that he knew that it was the county's money and that he should return it to the county because he actually did return to the county some of the money collected; and that he admitted that it was irregular for him to do what he had done. His explanation that he did this to favor certain merchants and to speed up purchases was rather weak. It is our opinion that there was ample evidence to sustain the convictions.

Appellant's attorney next contends that it was error for the court below to admit evidence of appellant's financial transactions during the indictment years. He relies heavily upon *Williams v. United States*, 168 U. S. 382, 18 S. Ct. 92. In *United States v. Jackskion*, 102 F. 2d 683, 684, 123 A.L.R. 116, 118, Judge PATTERSON, speaking for the Second Circuit Court of Appeals, said: "Jackskion urges that it was reversible error to admit evidence of his bank account, citing Williams v. United States, 168 U. S. 382, 18 S. Ct. 92, 42 L. Ed. 509. It is the general view that where a defendant is on trial for a crime in which pecuniary gain is the usual motive,

evidence of the sudden acquisition of money by the defendant is admissible, even though the source of the money is not traced. Commonwealth v. Mulrey, 170 Mass. 103, 49 N.E. 91; Commonwealth v. Coyne, 228 Mass. 269, 117 N.E. 337, 3 A.L.R. 1209; People v. Connolly, 253 N. Y. 330, 171 N.E. 393; Campanelli v. United States, 9 Cir., 13 F. 2d 750; O'Shea v. United States, 6 Cir., 93 F. 2d 169; Wigmore on Evidence, section 154; Wharton's Criminal Evidence, section 194. As pointed out by Mr. Justice HOLMES in Commonwealth v. Mulrey, supra, such evidence may, when taken with proof of other facts, have a logical tendency to prove criminal misconduct. The weight will of course vary, depending among other things on whether the money was kept secretively by the accused. See People v. Connolly, supra; O'Shea v. United States, supra. In Williams v. United States, supra, relied on by the appellant, the defendant was on trial for having extorted specific sums, $100 in one case and $85 in the other, from Chinese under color of his office, as Chinese inspector. Evidence that he had deposited between $4,000 and $5,000 in his bank account in the year when the offenses were said to have been committed was held inadmissible. The discussion in the Williams case, however, shows that no general rule of evidence was laid down. The case is to be taken, we think, as no more than a ruling on the particular facts there presented. It was so treated by the Sixth Circuit in O'Shea v. United States, supra. We are therefore of opinion that the District Court was right in permitting the prosecution to show that Jackskion's bank balance, normally at an amount between $500 and $1,000, had in a year climbed to more than $8,000." In this connection it should be recalled that Burns admitted that he had made the collections as alleged by the Commonwealth and had failed to turn them over and had commingled them with his own money and that he had paid his own bills out of this account.

Appellant's counsel also objected to that part of the district attorney's argument to the jury to the effect that the money embezzled was the jurors' own money. The court below immediately advised the jury that it was not a proper argument for the district attorney to make and cautioned the jury not to be influenced in the slightest degree by the remark. Burns admitted that he had collected the money for the county and admitted that it belonged to the county. We do not believe, under these circumstances, that the remark could have had any prejudicial effect upon the jurors. The jurors certainly must have understood that money which belonged to the county was actually taxpayers' money. We must give jurors credit for having some intelligence. Such a remark would be reversible error only where, under all the circumstances, it appears to have generated prejudice actually affecting the verdict. Where the court promptly takes effective action to remove any improper consequences of such an argument it is not reversible error: *Com v. Crittenton,* 326 Pa. 25, 31, 191 A. 358, 361; *Com. v. Capps,* 382 Pa. 72, 114 A. 2d 338; *Com. v. McHugh,* 187 Pa. Superior Ct. 568, 577, 145 A. 2d 896.

Appellant's counsel also complains of the fact that the court below did not submit to the jury the issue of the claim of right by the defendant to do what he did in this case and that the court below did not charge the jury as to the criminal intent necessary for a conviction. This is not a case like *Com. v. Kauffman,* supra, where the evidence indicated that the defendant, as manager of a corporation, had the power to collect money for the corporation and to expend it in behalf of the corporation. Burns, in the present case, by paying some of the money to the county, indicated that he knew that all of it should have been paid to the county. He also expressly admitted he knew what he was doing was irregular. Furthermore, he admitted that he did

not inform the county as to what he was doing. There was no evidence in the present case to indicate that the county had ever given him the authority to do what he did and he himself admitted that he withheld the money from the county and paid some of the bills himself "in order to prefer certain vendors" instead of paying it to the county and thus permitting the county commissioners to select the vendors. His real defense was not that he had a right to do what he did but that he did not embezzle the money but used it for county purposes. The court below very carefully charged the jury in such a way as to show what the real issue was. The court charged that, in order to convict, the jury "must also find that he fraudulently converted such money to his own use" and told the jury that the defendant denied that he had done so. Later in the charge, the trial judge said: "In determining whether the defendant did fraudulently, and with criminal intent, which you are required to find, convert the county's money to his own use. . . ." After reviewing defendant's contention that he had spent the money he had collected for the county for the benefit of the patients or the county, the trial judge said: "But he says that he didn't embezzle, that is he didn't convert to his own use with criminal intent, any of the funds; and if he didn't, Members of the Jury, he should be found not guilty." Under the charge of the court below there could have been no misapprehension possible on the part of the jury that it could convict if it found that defendant acted under a bona fide belief that he had a right to withhold money from the county and spend it as he did because the court below specifically told the jury that the defendant could not be convicted unless they found that he converted the county money to his own use with criminal intent and fraudulently. Nondisclosure by one accused of embezzlement is evidence of his intent. If it appears that the accused did not confess

to taking money until he was found out and charged therewith, an intent to embezzle will be inferred: 18 Am. Jur. 584, Embezzlement, §24; *Agnew v. United States,* 165 U. S. 36, 17 S. Ct. 235.

The judgments of sentence are affirmed and the defendant is directed to appear in the court below at such time as he may be there called, and that he be by that court committed until he has complied with the sentence, or any part of it which had not been performed at the time the appeal was made a supersedeas.