UNITED STATES of America ex rel.
Leroy DIXON

v.

A. C. CAVELL.

Misc. No. 3559.

United States District Court
E. D. Pennsylvania.

May 10, 1968.

Mansfield C. Neal, Jr., Philadelphia, Pa., for petitioner.

Arlen Specter, Dist. Atty. of Phila. County, Philadelphia, Pa., for respondent.

## OPINION

JOHN MORGAN DAVIS, District Judge.

The relator has filed a Petition for a writ of habeas corpus alleging that his conviction in 1965 pursuant to a trial

by jury, was illegal. The Court imposed a sentence of 6 to 12 years imprisonment, on the charge of rape, and associated offenses.[1] On appeal, the judgments of sentence were affirmed, Commonwealth v. Dixon, 208 Pa.Super. 736, 221 A.2d 865 (1966). Allocatur was refused by the Pennsylvania Supreme Court.

The allegations of error will be individually discussed in the following sections.

### PEREMPTORY CHALLENGE.

■■ It is contended that the action of the District Attorney, in peremptorily challenging all Negro jurors from the panel, resulted in a denial of the relator's Constitutional right to a trial by a representative jury.

The number of peremptory challenges to which counsel are respectively entitled is carefully governed by statute; 19 P.S. Pa. § 811. Since a peremptory challenge by definition, may be exercised by counsel as they, in their discretion see fit, there is no denial of due process if the District Attorney challenged members of the defendant's race. This was specifically decided in Swain v. State of Alabama, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965); see also Commonwealth ex rel. Ashmon v. Banmiller, 391 Pa. 141, 137 A.2d 236 (1958) cert. den. 356 U.S. 945, 78 S.Ct. 792, 2 L.Ed.2d 820 (1958); Commonwealth v. Raymond, 412 Pa. 194, 194 A.2d 150 (1963); United States ex rel. Dukes v. Sain, 297 F.2d 799 (7th Cir. 1962) and cases cited therein.

■ Nor can it be established that the system of jury selection in effect at the time was discriminatory.[2] The jury panels are made up from names placed in a lottery "wheel"; the source of the names are the "voter street lists", from every ward and division. Lists of prospective jurors are open to public inspection a year in advance. From an examination of this system, we conclude that the jury panel was quite representative of the community at large and consistent with Swain v. Alabama, supra, and the other decisions previously cited.[3]

### UNFAIRNESS OF TRIAL.

It is alleged that the "totality of circumstances" demonstrate that the trial was unfair. Specifically, counsel for the relator has asserted the following incidents and circumstances:

#### A.

#### *The Contempt Citation.*

■ Frequent clashes between the Court and the prosecutor, resulted in a contempt citation against the latter. An examination of the trial transcript substantiates the observation of the trial judge (who later revoked his contempt Order) that:

\* \* \* A great deal of this conduct occurred outside the presence of the jury and a substantial portion of it was either initiated or helped by defense counsel themselves. In any event, such conduct infringed upon the dignity of the Court and did not relate to the fairness of the trial as such.[4]

---

1. August, 1964 Session, Court of Quarter Sessions, Philadelphia. Indictment No. 1168—conspiracy to commit rape; No. 1169—Rape. Sentence was suspended on No. 1168, and may not now be vacated and sentence imposed. See Commonwealth v. Duff, 414 Pa. 471, 200 A.2d 773 (1964). Commonwealth v. Garrett, 423 Pa. 8, 222 A.2d 902 (1966).

2. The judges of the Courts of Common Pleas selected from the voter's list submitted by the County Board of Elections picked at random certain voters within Philadelphia County, who were then placed in quarterly drums for selection for the particular term of court. There is no doubt that chance solely entered into the selection of every person for jury duty.

3. We note from an examination of the rather lengthy *voir dire* transcript, (648 pages, 5 days duration) and the ancillary documents, that over 60 prospective jurors were examined by counsel.

4. See Opinion Sur Superior Court Rule, Commonwealth v. Jefferson, et al., August Sessions, 1964, dated April 13, 1966. P. 4.

Consequently, we can see no basis for the relator's allegation of reversible prejudicial error. Commonwealth v. Burns, 198 Pa.Super. 208, 182 A.2d 232 (1962); Commonwealth v. McHugh, 187 Pa. Super. 568, 145 A.2d 896 (1958). In the latter case, at p. 573, at p. 899 of 145 A.2d the court stated:

> Language of a prosecuting officer which will justify a reversal must be such that its unavoidable effect would be to prejudice the jury, forming in their minds a fixed bias and hostility toward the defendant, so that they could not fairly weigh the evidence and render a true verdict.

The relatively few clashes between the court and the prosecutor which came to the attention of the jury clearly did not create the effect proscribed by the rule in *McHugh,* related above.

### B.

#### *Failure to Sever.*

Four individuals were indicted, *inter alia* for allegedly raping a 64 year old woman, who was obviously in an advanced state of intoxication. By offering to give her a ride home, the defendants induced her to enter their automobile. She was placed in the back seat and then attacked. When police arrived, they discovered the relator with his "trousers and shorts down and he was going up and down on top of her."[5] Two of the other defendants were in the front seat, each physically restraining the victim. They both had their trousers unbuttoned and open.[6] The relator had to be forcibly removed from atop of the victim.[7]

However, the record is completely devoid of any motion by Dixon's counsel to request a severance. We also observe that the relator, through his counsel, did not raise this question in his motions for a new trial or in his appeal to the Superior Court. We may conclude that as to this allegation, the relator has either waived further objection or has failed to exhaust his state remedies.

However, after examining this allegation on the merits, as a matter of substantive law, there was no error in conducting a consolidated trial. It is the accepted rule that the propriety of severance is discretionary with the trial judge. Commonwealth ex rel. Bolish v. Banmiller, 396 Pa. 129, 151 A.2d 480 (1959) cert. den. 361 U.S. 898, 80 S.Ct. 201, 4 L.Ed.2d 153 (1959); Commonwealth v. Giambrone, 183 Pa.Super. 283, 130 A.2d 254 (1957); Commonwealth v. Bruno, 203 Pa.Super. 541, 201 A.2d 434 (1964). A motion for severance must be made *prior* to the commencement of trial, or will not be considered timely. Commonwealth v. Bruno, 203 Pa.Super. 541, 201 A.2d 434 (1964); Commonwealth v. Flaherty, 167 Pa.Super. 19, 74 A.2d 506 (1950). Failure to formally move for severance constitutes a waiver of any future objection thereto. United States v. Koritan, 182 F.Supp. 143 (E.D.Pa. 1960); aff'd, 283 F.2d 516 (3rd Cir. 1960).

### C.

#### *Adverse Publicity.*

It is alleged that the fact that the District Attorney was campaigning for reelection, coupled with the intensity of publicity regarding numerous rapes which were committed in the City of Philadelphia at the approximate time of trial, created an atmosphere of hostility. However, unlike the situation present in Sheppard v. Maxwell, 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966), there has been no demonstration of inflammatory publicity regarding this specific trial. In *Sheppard,* the court cautioned:

> * * * we note that unfair and prejudicial news comment on pending trials has become increasingly prevalent. Due process requires that the accused receive a trial [by an impartial jury] free from outside influ-

---

5. See trial N.T. p. 69.

6. See trial N.T. p. 69.

7. See trial N.T. p. 70.

ences. Id. at p. 362, 86 S.Ct. at p. 1522.

Having failed to demonstrate any adverse publicity, we must conclude that this allegation is without merit.

#### D.

*References to Victim's Underclothing.*

It is alleged that the prosecutor attempted to inflame the minds of the jurors, by frequently displaying the victim's underclothing.

 It will be recalled that the victim was released from her attackers, only after the police actively intervened. The officers arriving at the scene testified that the victim was completely undressed.[8] In conjunction with this testimony, the officers and defendants, as well as the victim were required to identify not only the victim's underclothing, but also her outer clothing.[9] The Pennsylvania rule regarding the amount of exposure to evidence of a prejudicial nature places a high degree of discretion with the trial judge. Unless there is a flagrant abuse of discretion, reversible error will not exist. Commonwealth v. Dickerson, 406 Pa. 102, 176 A.2d 421 (1962); Commonwealth v. Novak, 395 Pa. 199, 150 A.2d 102 (1959). But such evidence should not be "overused", and should be introduced and displayed only in furtherance of a distinct purpose. Commonwealth v. Johnson, 402 Pa. 479, 480, 167 A.2d 511 (1961); Commonwealth v. Raymond, 412 Pa. 194, 206, 194 A.2d 150 (1963). Here, reference to the victim's garments were clearly consistent with the above guidelines, and were relatively few. Reviewing the record as a whole, we cannot conclude that the trial judge abused his discretion in

permitting an "overuse" of the exhibits,[10] since the victim's garments were brought to the attention of the jury about six times, during the course of a trial which lasted almost one month.[11]

#### ADMISSIBILITY OF INCRIMINATING STATEMENTS.

It is alleged that the introduction into evidence of statements made by the relator (and his co-defendants) to the police subsequent to arrest, were inadmissable, under the rule of Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964) which places a requirement upon the police to sufficiently warn an accused of his right to remain silent, and the right to counsel.

The statements at issue were not introduced by the prosecution as a part of the Commonwealth's case; rather, they were elicited from the arresting and investigating police officers, after the relator had testified on direct, in his own defense. The prosecutor then placed the aforementioned police officers on the stand and elicited testimony which demonstrated inconsistencies in the relator's own testimony. The purpose was rather apparent—to attack the credibility of the relator's testimony by way of impeachment.[12]

 Subsequent to *Escobedo*, this Commonwealth in Commonwealth v. Reginelli, 208 Pa.Super. 344, 222 A.2d 605 (1966) cert. den. 387 U.S. 945, 87 S.Ct. 2078, 18 L.Ed.2d 331 (1967) adopted Walder v. United States, 347 U.S. 62, 74 S.Ct. 354, 98 L.Ed. 503 (1954), where the Supreme Court held that the prosecution may make use of unlawfully obtained evidence (assuming, arguendo, that the statements of the defendants to the police were unlawfully obtained under the rule of *Escobedo*) in the form of tes-

---

8. See, e. g., N.T. pp. 71–73; 651–652; 1357.

9. See, N.T. pp. 433–436; 1336.

10. We note that in his petition for a writ of habeas corpus, the relator asserts that "the district attorney continually waived a pair of woman's panties before the jury * * *" However, during

trial, the victim testified that she was not wearing panties, nor had any in her possession during the evening of the attack. See N.T. pp. 475–476.

11. Counsel's objection appears at N.T. p. 1358.

12. See N.T. pp. 1504–1505, 1515–1521, 1536–1540.

timony for the purpose of *impeaching* the credibility of a defendant. However, this is only applicable if the defendant "opens the door on direct examination by making assertions which go beyond the denial of complicity in the crime charged." Commonwealth v. Reginelli, supra, 208 Pa.Super. at p. 353, 222 A.2d at p. 610. Citing Commonwealth v. Wright, 415 Pa. 55, 202 A.2d 79 (1964), three conditions must exist before this evidence may be used for impeachment purposes: (1) the defendant must elect to take the stand. This was clearly fulfilled in the instant case.[13] (2) His testimony which conflicts with the illegally secured evidence must do more than deny the elements of the crime for which he is being tried. Here, the contradictory statements did not directly pertain to the elements of the crime, but to corollary matters such as whether the victim was in the back seat of the car; [14] or whether the victim walked to the car with the defendants.[15] (3) The inadmissible evidence should be received only to the extent that it does not admit the very acts which are essential elements of the crime charged. Subsequent to the impeaching testimony mentioned above, the trial judge very adequately cautioned the jury that the prior inconsistent statement may not be considered substantive evidence but may only be used to impeach the defendants as witnesses.[16] Although *Walder*, upon which the three criteria mentioned above and applied by the Superior Court in *Reginelli*, was decided by the Supreme Court in 1954, ten years before *Escobedo*, there are a substantial number of recent Federal decisions which presently apply the *Walder* rationale.[17] United States v. Grosso, 358 F.2d 154, 162 (3rd Cir. 1966), reversed on other grounds, 390 U.S. 62, 88 S.Ct. 709, 19 L.Ed.2d 906, January 29, 1968, cited *Walder* as follows:

> It is one thing to say that the Government cannot make an affirmative use of evidence unlawfully obtained. It is quite another to say that the defendant can turn the illegal method by which evidence in the Government's possession was obtained to his own advantage, and provide himself with a shield against contradiction of his untruths.

We recognize that two recent decisions of the Commonwealth have limited the application of *Walder*, to situations where either 4th Amendment errors exist, or where the error may be characterized as "harmless", applying the guidelines of Chapman v. State of California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

In Commonwealth v. Padgett, 428 Pa. 229, 237 A.2d 209 (1968), after a thorough analysis the court concluded that:

> Apparently the United States Supreme Court was content in *Chapman* to permit state and lower federal courts to fill the interstices between errors affecting rights basic to a fair trial, and those that can be tested by the ruberic of harmless error. Fortunately, however, later decisions strongly indicate that the United States Supreme Court has taken a postition * * * that an *Escobedo* or *Miranda* error can be harmless.

Assuming, *arguendo*, that the introduction by way of the police officers of statements given by the defendants to the police was error, we believe that the impact on the jury would properly be characterized as harmless, applying the

---

13. See N.T. pp. 1325–1396.

14. See N.T. pp. 1504–1515.

15. See N.T. p. 1520.

16 N.T. p. 1515, also, see p. 1521 for a similar warning by the trial judge with regard to an inconsistent statement made by the relator.

17. For example see Gordon v. United States, 127 U.S.App.D.C. 343, 383 F.2d 936 (1967); Kerrigan v. Scafati, 348 F.2d 187 (1st Cir. 1965); United States v. Doyle, 373 F.2d 875 (2nd Cir. 1967); Compton v. United States, 334 F.2d 212 (4th Cir. 1964). There are over thirty appellate decisions subsequent to *Escobedo*, which cite and adopt the rationale of *Walder*.

standard as developed in *Chapman* and recently cited with approval in the first of the so-called "lineup cases"; United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967). See also Commonwealth v. Robinson, 428 Pa. 458, 239 A.2d 308 (1968).

On April 23, 1968, the Third Circuit Court of Appeals reviewed the application of the *Walder* doctrine to *Miranda* and *Escobedo* errors. United States ex rel. Hill v. Pinto, 3 Cir., 394 F.2d 470. Although the views of the Commonwealth as expressed in *Padgett*, supra and Commonwealth v. Burkett, 211 Pa.Super. 299, 235 A.2d 161 (1968) were essentially adopted by the Circuit court, the facts in *Hill* foreclosed the necessity of examining the application of the "harmless error" rationale to *Walder*. Consequently, we feel constrained to adopt the view of the appellate courts of the Commonwealth regarding the possibility that under certain circumstances, a technical *Escobedo* error may be constitutionally harmless. Applying this to the statements which were introduced against the relator during his trial, we hold that they were sufficiently collateral to be properly characterized as harmless, and certainly did not rise to the introduction of essential elements of the offenses charged, which would be proscribed by *Walder* itself, as well as *Hill* and the aforementioned decisions of the Commonwealth.

### DUTY OF COURT.

Finally, it is alleged that the trial judge should have brought to the attention of defense counsel, that certain testimony was objectionable, once it was clear that defense counsel did not intend to object. Since the petition is devoid of precisely what testimony is in question, this allegation is rather vague.[18]

However, an independent examination of the trial transcript does not reveal the existence of incompetency of defense counsel, which would require us to grant the relator a new trial. United States ex rel. Gary v. Hendrick, 238 F. Supp. 757 (E.D.Pa.1965); Commonwealth ex rel. Washington v. Maroney, 427 Pa. 599, 235 A.2d 349 (1967); Commonwealth ex rel. Johnson v. Russell, 428 Pa. 440, 239 A.2d 399 (1968).

In addition, we know of no rule which would require the court to urge counsel to raise objections to the introduction of evidence or testimony. See United States ex rel. Mathis v. Rundle, 3rd Cir., 394 F.2d 748, May 7, 1968.

### ORDER

And now, this 10th day of May 1968, the petition for a writ of habeas corpus is denied.[19]

---

18. During the hearing, counsel for the relator stipulated that "the record of the proceedings in this matter would suffice as far as the factual presentation is concerned."

19. There is sufficient basis for the issuance of a certificate of probable cause. Fitzsimmons v. Yeager, 3rd Cir., 391 F. 2d 849, November 9, 1967.