334 A.2d 648
**COMMONWEALTH of Pennsylvania**
**v.**
**Barry HILTON, Appellant.**

Supreme Court of Pennsylvania.

Submitted Nov. 11, 1974.

Decided March 18, 1975.

94

Thomas D. Watkins, Philadelphia, for appellant.

F. Emmett Fitzpatrick, Jr., Dist. Atty., Richard A. Sprague, 1st Asst. Dist. Atty., Steven H. Goldblatt, Asst. Dist. Atty., Chief, Appeals Div., John H. Isom, Asst. Dist. Atty., Abraham J. Gafni, Deputy Dist. Atty. for Law, Philadelphia, for appellee.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION

ROBERTS, Justice.

Appellant Barry Hilton was convicted, after trial before a jury, of voluntary manslaughter for the shooting death of John Aikens. Following denial of post-trial motions,[1] this appeal ensued.[2] We affirm.

The facts of this case are ably summarized in the opinion of the trial court denying appellant's post-trial motions:

"The defendant resided, with his mother, June Jenkins, and his step-father, Elway Jenkins, at 803 North 43rd Street, Philadelphia, Pennsylvania. On Saturday evening of May 6, 1972, Mr. and Mrs. Jenkins were entertaining several people in their home. Early in the evening the decedent, John Aikens and a friend of his, Harry Taylor, entered the premises. An argument arose concerning the refusal of the Jenkins' to serve a drink to Mr. Taylor. Despite the requests of Mr. Jen-

1. Appellant's written post-trial motions consisted solely of a boiler-plate challenge to the sufficiency of the evidence. We infer from the written opinion of the trial court that the issues raised on this appeal were assigned as grounds in support of the motions. Failure to specify *in writing* the reasons urged in support of motions for a new trial and in arrest of judgment complicates the appellate task of determining whether alleged trial errors have been properly preserved for appellate review. See *Commonwealth v. Blair*, 460 Pa. 31, n. 1, 331 A.2d 213, 214 n. 1 (1975).

2. Appellate Court Jurisdiction Act of 1970, Act of July 31, 1970, P.L. 673, art. II, § 202(1), 17 P.S. § 211.202(1) (Supp.1974).

kins, the decedent, Aikens, and Mr. Taylor refused to leave and the defendant was awakened and asked to come downstairs to eject them, which he did.

"While it was not clear how many more times the decedent and his friend sought to gain entrance to the Jenkins' house, it is clear that they entered the house on at least one more occasion later that evening. This time they were put out by a guest in the house. Before being ejected this time, Harry Taylor made a statement that could be construed as a threat to the occupants of the house, to the effect, that he had something for them in his car. At least once and possibly twice more the decedent and his friend attempted unsuccessfully to gain entrance to the Jenkins' house. While the two men were outside the house this last time the defendant observed them through the window of his second floor front bedroom and getting his gun he fired one shot in their direction."

Decedent was struck in the right side of the head and died instantly.

Two of the issues appellant raises here have not been preserved for appellate review. First, he argues that the trial court erred in refusing two of appellant's requested jury instructions on self-defense and defense of others. Following the court's refusal, this exchange occurred:

"[Defense counsel]: [Y]our Honor, we'll just as a matter of form enter objection to the refusals—

"The Court: Well, after I charge—

"[Defense counsel]: And if they're not covered, then—

"The Court: —then we'll have another sidebar conference, at which you'll have an opportunity to take exceptions, ask for any corrections or additions that you wish, either of you. Okay?"

After the court's instructions to the jury, defense counsel stated: "I have no objections or additions or modifica-

tions that I request in the charge." Appellant's counsel apparently found the court's instructions unobjectionable in spite of the refusal of his requested instructions. Any objections to the charge have been waived, and any errors therein may not be raised on appeal. See Pa.R. Crim.P. 1119(b); *Commonwealth v. Johnson,* 457 Pa. 554, 562 n. 8, 327 A.2d 632, 637 n. 8 (1974); *Commonwealth v. Martinolich,* 456 Pa. 136, 150 n. 10, 318 A.2d 680, 688 n. 10, cert. denied, 419 U.S. 1065, 95 S.Ct. 651, 42 L.Ed.2d 661 (1974); *Commonwealth v. Watlington,* 452 Pa. 524, 306 A.2d 892 (1973); see also *Commonwealth v. Clair,* —— Pa. ——, 326 A.2d 272 (1974).

Second, appellant argues that he was deprived of a fair trial by prejudicial remarks concerning appellant's use of narcotics made by the prosecutor in his closing argument to the jury. This issue has also not been preserved for review. Immediately before the jury retired to deliberate, appellant's counsel stated:

"I have wanted to enter an objection to the argument of the District Attorney, and I'll reserve that objection until the verdict . . . .

"The Court: What? Do you mean the whole argument?

"[Defense counsel]: No. On one particular point of the argument which referred to his use of narcotics, and the inferences made from there I think are prejudicial to the defendant, and I object to those [as] improper argument. I'm doing it now only because I didn't have an opportunity previously, and I didn't think we should do it in front of the jury. But I don't really think it's necessary at this point until there's a verdict. If you want, I will restate it at that point.

"The Court: Okay."

 This objection was equivalent to no objection at all. The purpose of requiring objection to improper argument prior to the beginning of the jury's delibera-

tions is to bring the error to the attention of the trial court so that the court may attempt to cure it. See *Commonwealth v. Sampson,* 454 Pa. 215, 220, 311 A.2d 624, 627 (1973); cf. *Commonwealth v. Riley,* 459 Pa. 42, 46, 326 A.2d 400, 402–03 (1974) (opinion of three Justices). Here, while counsel raised the issue in a timely fashion, he in effect invited the court to abstain from attempting a cure by curative instructions or otherwise. Failure to seek any remedy for whatever prejudice may have resulted from the remarks constitutes a waiver, and appellant may not now urge that prejudice as grounds for awarding him a new trial. *Commonwealth v. Sampson,* supra; see also *Commonwealth v. Clair,* supra.

■ Appellant's only properly preserved argument is that the trial court erred in admitting into evidence a photograph that appellant claims is prejudicial and inflammatory. We disagree.

The photograph depicts the body of John Aikens lying on the sidewalk as he was found by the police. It is an 8″ by 10″ black-and-white photograph taken some distance from the body. Neither the wound nor the face of the deceased is visible, and he is fully clothed. The only possible inflammatory element is a very small dark area around the deceased's head; that area is a puddle of blood, although not obviously so.

In determining the admissibility of potentially inflammatory photographs, the trial court must apply a balancing test of " ' "whether or not the photographs are of such essential evidentiary value that their need clearly outweighs the likelihood of inflaming the minds and passions of the jurors." ' " *Commonwealth v. Garrison,* 459 Pa. 664, 666, 331 A.2d 186, 187 (1975).

In this case, the " ' "likelihood of inflaming the minds and passions of the jurors" ' " is exceedingly slight. Compare *Commonwealth v. Garrison,* supra, at 666, 331 A.2d at 187. The photograph did serve an essential evi-

dentiary purpose. Appellant contended at trial that he fired his gun to protect his family from imminent attack by Aikens who, appellant testified, was poised to enter or throw some object through a first-floor window. The photograph persuasively tends to rebut that contention. The Commonwealth's medical witness testified that the gunshot wound killed Aikens instantly and he fell at practically the exact point where he was standing. The photograph, in conjunction with other photographs, establishes that the deceased was a considerable distance from appellant's home and moving away from it when shot.

We conclude that the trial court correctly determined that the evidentiary value of the photograph clearly outweighed its inflammatory potential.

Judgment of sentence affirmed.

POMEROY, J., filed a concurring opinion in which JONES, C. J., and EAGEN, O'BRIEN and NIX, JJ., join.

POMEROY, Justice (concurring).

I agree that in admitting the photograph of the deceased victim into evidence the trial court was not in error. I am unable to accept, however, that the standard against which such evidence is to be tested has been accurately articulated in the opinion announcing the decision of the Court.

We have repeatedly held that whether a photograph of a corpse is to be admitted into evidence in a homicide case is a matter within the discretion of the trial court. Only an abuse of that discretion justifies reversal by this Court. *Commonwealth v. Woods*, 454 Pa. 250, 311 A.2d 582 (1973); *Commonwealth v. Chasten*, 443 Pa. 29, 275 A.2d 305 (1971); *Commonwealth v. Robinson*, 433 Pa. 88, 249 A.2d 536 (1969); *Commonwealth v. Powell*, 428 Pa. 275, 241 A.2d 119 (1968); *Commonwealth v. Peyton*,

360 Pa. 441, 62 A.2d 37 (1948). A photograph of a corpse is not inflammatory *per se. Commonwealth v. Petrakovich,* 459 Pa. 511, 329 A.2d 844 (1974); *Commonwealth v. Collins,* 440 Pa. 368, 269 A.2d 882 (1970). Whether or not such a photograph is admissible depends, as we have recently restated in *Petrakovich, supra,* on a two-stepped analysis. First, the trial court must decide whether the photograph possesses inflammatory characteristics. If the Court finds that it does not, the picture is admissible as is any evidentiary item, subject, of course, to the qualification of relevance. If, but only if, the photograph is deemed to be inflammatory, the Court must then apply the balancing test set forth in the majority opinion, i. e., is the photograph of "such essential evidentiary value that [its] need clearly outweighs the likelihood of inflaming the minds and passions of the jurors." [1] *Commonwealth v. Garrison,* 459 Pa. 664, 666, 331 A.2d 186, 187 (1975); *Commonwealth v. Petrakovich,* 459 Pa. 511, 329 A.2d 844 (1974).

In an era in which the American populace is repeatedly witness, via the news media to scenes of brutality in all parts of the world, the comparatively innocuous photograph challenged instantly can hardly be considered inflammatory; at least, we cannot say that the trial court abused its discretion in holding that it was not inflammatory, and further we need not go. The opinion announcing the decision of the Court ignores what *Petrakovich* points to as a court's preliminary inquiry, and instead proceeds to "balance" this picture's "essential" evidentiary value against its potential for inflaming a jury. This is putting the cart before the horse, for in the absence of a finding that the photograph is indeed inflammatory, there is nothing which exists to be balanced. Beyond this, whatever the meaning of the word "essential" in the phrase "essential evidentiary value" it cer-

1. *Commonwealth v. Powell,* 428 Pa. at 278–79, 241 A.2d at 121; *Commonwealth v. Peyton,* 360 Pa. at 450, 62 A.2d at 41.

tainly must denote something more than mere relevance. The majority, however, would rob the word of any independent significance. That this is so is clearly demonstrated in the case at bar since, in light of the pathologist's testimony, this photographic evidence was, at most, cumulative, and thus, only minimally relevant.[2]

The only logical interpretation of the opinion of my brother Roberts is that, at least implicitly, it suggests that a photograph of a corpse is inherently inflammatory, thus necessitating a balancing of probative value and prejudicial impact in every case. This, it must be reiterated, is not the law of this Commonwealth.

JONES, C. J., and EAGEN, O'BRIEN and NIX, JJ., join in this opinion.

2. See and compare *Commonwealth v. Scaramuzzino*, 455 Pa. 378, 317 A.2d 225 (1974); *Commonwealth v. Biebighauser*, 450 Pa. 336, 300 A.2d 70 (1973); *Commonwealth v. Eckhart*, 430 Pa. 311, 242 A.2d 271 (1968); *Commonwealth v. Powell, supra.*