350 A.2d 862

**COMMONWEALTH of Pennsylvania,
Appellee,**

v.

**Ronald JONES, Appellant.**

Supreme Court of Pennsylvania.

Argued April 17, 1972   (J–166).

Reargued April 8, 1975   (J–147).

Decided Jan. 29, 1976.

Harold L. Randolph, Philadelphia, for appellant.

Stephen J. McEwen, Jr., Dist. Atty., Ralph B. D'Iorio, Anna I. Vadino, Asst. Dist. Attys., Media, for appellee.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY and MANDERINO, JJ.

## OPINION OF THE COURT

EAGEN, Justice.

On January 24, 1970, the appellant, Ronald Jones, was convicted by a jury in Delaware County of murder in the first degree, robbery, aggravated assault and battery, assault with intent to kill and conspiracy. Post trial motions were timely filed and denied. On the murder conviction, Jones was sentenced to life imprisonment, and an appeal to this Court from that judgment of sentence then followed.[1]

Thereafter, on May 4, 1973, this Court determined the trial court had erred in its summary denial of Jones' pretrial petition challenging the array of the jury panel from which the trial jury had been selected. See *Commonwealth v. Jones*, 452 Pa. 299, 304 A.2d 684 (1973). We therein stated, "Our laws insure the accused a fair and impartial jury—one chosen from a cross section of the community, and every effort must be afforded the accused to insure the body of citizens who sit in judgment must be selected in accordance with the Equal Protection Clause of the Fourteenth Amendment. If a defendant has grounds upon which he can challenge the system of selecting jurors, he must be given an opportunity to prove it." *Id.* at 313, 304 A.2d at 692. The record was remanded to the trial court to permit Jones "an

---

1. Jones was also sentenced to prison on the robbery indictment, but no appeal was entered from that judgment of sentence.

opportunity to properly present and establish his claim."
*Id.* at 315, 304 A.2d at 693.[2]

On July 18, 1973, an evidentiary hearing was held at which Jones was given an opportunity to present testimony and relevant factual data in support of his claim that the jury selection system used in Delaware County resulted in systematic discrimination because of race. After giving due consideration to the testimony and evidence presented at this hearing, the trial court concluded that Jones' contention was without merit. The record of this evidentiary hearing was then certified to this Court for further disposition.

■ It is not settled constitutional law that the Sixth Amendment's guarantee of an impartial jury, trial in criminal prosecutions [3] mandates the presence of a fair cross section of the community on venires, panels or lists from which petit juries are chosen. *Taylor v. Louisiana,* 419 U.S. 522, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975). As stated in *Taylor v. Louisiana,* supra:

> "The purpose of a jury is to guard against the exercise of arbitrary power—to make available the common-sense judgment of the community as a hedge against the overzealous or mistaken prosecutor and in preference to the professional or perhaps overconditioned or biased response of a judge   [Cite omitted.]   This prophylactic vehicle is not provided if the jury pool is made

**2.** In addition, this Court determined that the other claims of error asserted by Jones, to wit: (1) that there was insufficient probable cause to justify issuance of a search warrant which uncovered a .38 calibre revolver entered into evidence at trial; (2) that the trial court erred in not suppressing an incriminating written statement given by Jones to the police; (3) that the evidence was insufficient to sustain the conviction of murder in the first degree; and (4) that the trial court erred in denying his motion for a change of venue, were meritless.

**3.** The Sixth Amendment's provision for jury trial is made binding on the states by virtue of the Fourteenth Amendment. See *Duncan v. Louisiana,* 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968).

up of only special segments of the populace or if large, distinctive groups are excluded from the pool. Community participation in the administration of the criminal law, moreover, is not only consistent with our democratic heritage but is also critical to public confidence in the fairness of the criminal justice system."

*Id.* at 530, 95 S.Ct. at 698. See also *Alexander v. Louisiana,* 405 U.S. 625, 92 S.Ct. 1221, 31 L.Ed.2d 536 (1972); *Carter v. Jury Commission of Greene County,* 396 U.S. 320, 90 S.Ct. 518, 24 L.Ed.2d 549 (1970); *Smith v. Texas,* 311 U.S. 128, 61 S.Ct. 164, 85 L.Ed. 84 (1940).

■ However, it is also clear that a defendant in a criminal prosecution is not constitutionally entitled to demand a proportionate number of his race on the jury which tries him nor on the venire or jury roll from which the petit jurors are drawn. *Swain v. Alabama,* 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965); *United States v. Dorsey,* 462 F.2d 361 (3rd Cir. 1972), cert. denied, 409 U.S. 870, 93 S.Ct. 197, 34 L.Ed.2d 120 (1972). Rather, an accused is only entitled to demand that in the empaneling of the petit jury there shall be no purposeful or deliberate systematic exclusion of qualified persons on account of race. *Swain v. Alabama,* supra; *Avery v. Georgia,* 345 U.S. 559, 73 S.Ct. 891, 97 L.Ed. 1244 (1953); *United States v. Zirpolo,* 450 F.2d 424 (3rd Cir. 1971). Consequently, for a jury selection system to be found constitutionally infirm, "the facts must provide evidence indicating either that the procedures as designed or implemented are likely to result in juries unrepresentative of a cross section of the community, or that the procedures have, in fact, continuously failed to represent certain identifiable population groups over a period of time." *Commonwealth v. Butler,* 448 Pa. 128, 133, 291 A.2d 89, 91 (1972).

As established at the evidentiary hearing, the array of jury panels in Delaware County is drawn by random from the voter registration lists. The name of each reg-

istered voter is placed on an IBM computer card kept in the data processing center at the county court house. The computer cards are arranged in sequential order, according to the listing by which the names of the registered voters appear on the registered voter street lists. Juror qualification questionnaires are then sent to registered voters randomly selected by a computer specifically programmed for random selection.[4] The completed questionnaires are then returned to a Jury Board member [5] who screens the questionnaires to exclude any registered voter who, by law, would not be an eligible juror.[6] The questionnaires of eligible jurors are then placed in a jury wheel from which names are drawn, at a public drawing, to serve on jury panels for different terms of court.[7]

Instantly, Jones alleges that the jury selection system utilized in Delaware County systematically excludes large numbers of the black population from service on jury

4. During the year in question, 1970, it was determined that every twenty-third registered voter in Delaware County would have to receive a juror qualification questionnaire in order to obtain enough jurors for the year. Therefore, one jury commissioner pulled a slip from a basket containing the names of the forty-nine municipalities comprising Delaware County. The other jury commissioner pulled a slip from a basket containing twenty-three slips, with each slip numbered from one to twenty-three. Springfield Township was the name drawn and the number eleven was drawn. Starting with the eleventh voter on the voter registration list of Springfield Township every twenty-third name on the total voter registration list was then selected by the computer to receive a juror qualification questionnaire.

5. The Jury Board is composed of two elected members and the judges of the Court of Common Pleas of Delaware County.

6. See generally 17 P.S. § 1279.

7. Although the voter registration form does contain a designation for the registrant's race, such designation is not a factor in the juror selection process. Rather, this designation is used only to fully identify the registered voter and Jones does not contend that blacks are denied the opportunity to register to vote. The voter registration form is considered only in arriving at the names of qualified voters whose names are then placed on the IBM computer cards. Most importantly, the juror qualification questionnaires which are sent to prospective jurors contain no designation as to race.

panels because the percentage of voting blacks in Delaware County is "not related to the population." He contends that because of prior historical conditions of slavery and servitude, blacks have not always exercised their franchise or right to vote. Because of the existence of this inherent exclusion, Jones posits that the jury selection system should go beyond voter registration rolls and should encompass selection from the general population.

We reject this argument because we do not believe the Constitution requires a source of prospective jurors other than those names gathered from the voter registration lists simply because one identifiable group of individuals may vote in a proportion lower than that of the general population. As the Fifth Circuit Court of Appeals stated in *Camp v. United States*, 413 F.2d 419, 421 (5th Cir. 1969), cert. denied, 396 U.S. 968, 90 S.Ct. 451, 24 L.Ed.2d 434 (1969): "Use of [voter registration] lists as the sole source of names for jury duty is constitutionally permissible *unless this system results in the systematic exclusion of a 'cognizable group or class of qualified citizens.'*" [Emphasis added.] And a group of persons who have failed to register to vote has never been considered to constitute a "cognizable group." See *United States v. Lewis*, 472 F.2d 252 (3rd Cir. 1973); *United States v. Freeman*, 514 F.2d 171 (8th Cir. 1975); *Camp v. United States*, supra; *Grimes v. United States*, 391 F.2d 709 (5th Cir. 1968).

Feasibility makes reliance on voter registration lists attractive. They contain a large if not precisely perfect sample of the qualified residents of an area, reflecting all the varying attitudes relevant to the petit jury function which such residents hold. Among persons qualified to vote, and absent discriminatory practices in administering the election system, not alleged herein, the voter list is open as a matter of choice. The choice of the registered voter list as the source of names for jury

480

selection is surely not invidious or systematic discrimination, except where the list itself reflects discriminatory practices.[8]

Therefore, while a fairer cross section of the community may have been produced by a selection system utilizing the general population of Delaware County, the jury selection system's sole reliance upon voter registration lists may not be considered constitutionally impermissible. See *United States v. Lewis,* supra; *Smith v. United States,* 456 F.2d 121 (3rd Cir. 1972); *United States v. Johnson,* 386 F.Supp. 1034 (W.D.Pa.1974); *United States v. Torquato,* 308 F.Supp. 288 (W.D.Pa. 1969).[9]

Next, Jones contends the representation of only three blacks on the jury panel which found him guilty was disproportionate to the black population of Delaware County. However, as stated previously, a defendant in a criminal prosecution is not constitutionally entitled to demand a proportionate number of his race on the jury panel which tries him. *Swain v. Alabama,* supra. "Neither the jury roll nor the venire need be a perfect mirror of the community or accurately reflect the proportionate strength of every identifiable group." *Swain v. Alabama,* supra, 380 U.S. at 208, 85 S.Ct. at 829.[10]

8. We note that the similiar jury selection system utilized in Philadelphia County was examined in *United States ex rel. Dixon v. Cavell,* 284 F.Supp. 535 (E.D.Pa.1968), and given judicial approval; the court stating: "From an examination of this system, we conclude that the jury panel was quite representative of the comunity at large and consistent with *Swain v. Alabama,* supra, and the other decisions previously cited." *Id.* at 537.

9. See also the Jury Selection and Service Act of 1968, 28 U.S.C. § 1861 et seq., more particularly, 28 U.S.C. § 1863(b)(2) wherein the use of voter registration lists in the selection of federal grand and petit juries is specifically mandated.

10. In fact, as stipulated by counsel, the approximate population of Delaware County at the time of trial was 603,456 of which 43,574 were black, or 7.22 per cent. Of sixty-seven prospective jurors called to serve in the instant case, three were black or 4.48 per cent. And of the fourteen persons actually sworn to serve on the

Inasmuch as the other allegations of error raised by Jones have been previously considered and dismissed,[11] the judgment of sentence is affirmed.

ROBERTS, J., filed a concurring opinion.

MANDERINO, J., filed a dissenting opinion.

NIX, J., took no part in the consideration or decision of this case.

ROBERTS, Justice (concurring).

I concur in the result because appellant has failed to show any prejudice resulting from the system of selection of potential jurors employed in this case.

MANDERINO, Justice (dissenting).

I dissent. The majority states that, even though blacks register to vote in a proportion smaller than the proportion of blacks in the general population, the defendant was not denied his right to an impartial jury because (1) "a group of persons who have failed to register to vote has never been considered to constitute a 'cognizable group'" and (2) the nonregistration was voluntary in the sense that no one had affirmatively barred their registration. *This defies logic!* If blacks (and probably other minorities and young people) are less likely to register to vote, then any jury pool that uses voter registration lists as a source of jurors cannot possibly represent a cross section of the community and *whether the nonregistration is voluntary or coerced is irrelevant. The end result is still an unrepresentative jury pool.* This is particularly true when one considers other

jury panel (including alternates) one was a black man or 7.14 per cent.

11.  See note 2, supra.

482

sources of prospective jurors which are readily available on computers such as social security, census and other lists.

I would hold, that the use of *only* voter registration lists for selecting prospective jurors is a violation of the defendant's Sixth Amendment right to a trial by an impartial jury unless the prosecution can show that in a particular community voter registration lists reflect the general make up of that community.