380 A.2d 747

COMMONWEALTH of Pennsylvania

v.

**Norman Michael MARTINEZ, Appellant.**

Supreme Court of Pennsylvania.

Argued May 24, 1977.

Decided Dec. 1, 1977.

Allen H. Smith, York, for appellant.

Donald L. Reihart, Dist. Atty., Floyd P. Jones, York, for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION

ROBERTS, Justice.

On January 16, 1975, following a trial by jury, appellant was found guilty of murder of the third degree and aggra-

vated assault. Post-verdict motions were filed and denied, and concurrent sentences of seven and one-half to fifteen years on the murder charge, and two and one-half to five years on the aggravated assault charge, were imposed. This appeal followed. We affirm.

## I

We deal initially with appellant's objections to the trial court's pre-trial rulings. First, appellant argues that the trial court erred in denying his motion to strike the array of petit jurors. Appellant alleged that the jurors were selected only from voter lists, that such a method of selection tends to under-represent the poor, and that therefore the petit jury would not represent a fair cross-section of the community.

It is, of course, clear that the sixth amendment to the United States Constitution requires state petit juries to reflect a fair cross-section of the community. See *Taylor v. Louisiana*, 419 U.S. 522, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975). And it may very well be that voter lists as a general matter significantly under-represent certain identifiable segments of the community, including poor people. See Kairys, Kadane & Lehoczky, Jury Representativeness: A Mandate for Multiple Source Lists, 65 Cal.L.Rev. 776, 805–809 (1977). But we have no idea whether this general proposition was true in York County at the time of trial. No proof was submitted to demonstrate the extent to which the poor were not present on the voter rolls. Appellant simply did not show that an unrepresentative array in fact resulted from using voter registration lists.

This case is therefore governed by our recent decision in *Commonwealth v. Jones*, 465 Pa. 473, 350 A.2d 862 (1976). There appellant challenged an array of jurors chosen solely from voter registration lists on the theory that such a method of selection resulted in systematic racial discrimination. We found, however, that appellant had not shown that "the list itself reflects discriminatory practices." *Id.* 465 Pa. at 480, 350 A.2d at 866. Similarly, although the motivation

of those who chose to use voter lists was not relevant to appellant's claim of unrepresentativeness, appellant here was at least required to show the extent to which the voter list reflected exclusion of the poor. This he has not done and accordingly his claim must fail.

■ Appellant next asserts that it was error for the trial court to grant the Commonwealth's motion to amend the indictment so that it would charge murder of the third degree, rather than murder of the second degree. The indictment charged appellant with "intentionally, knowingly, recklessly or negligently" causing the death of another human being, but the indictment indicated that such conduct violated sections 2502(a) and (b) of the Crimes Code (first and second degree murder), rather than 2502(a) and (c) (first and third degree). It is clear, however, that the words used encompass the charge of third degree murder. It was thus within the power of the trial court to allow the amendment, which corrected a "defect in form" and did not "charge an additional or different offense." Pa.R.Crim.P. 220.

Nor did the trial court deny appellant the right to argue against the motion. The court asked appellant's counsel, prior to granting the motion, whether he had any additional arguments not contained in his pleadings; he replied that he had nothing further.

## II

■ Appellant raises three objections to the trial proceedings. First, appellant claims it was error to admit into evidence a knife sheath which the investigating police officer found in the immediate area of the stabbing. The officer testified that he found it within one hour of the stabbing and that he had been at the crime scene continuously for that period. A witness to the stabbing testified that he saw appellant holding something in his hand that looked like a "knife holster," but the witness was unable to positively identify the sheath in question.

The admission of such evidence is largely within the discretion of the trial judge. See *Commonwealth v. Ford,* 451 Pa. 81, 85, 301 A.2d 856, 858 (1973) (citing cases). Testimony positively identifying the sheath as appellant's is unnecessary. See *Commonwealth v. Yount,* 455 Pa. 303, 316, 314 A.2d 242, 249 (1974). So long as a proper foundation is laid to show the relevance of the evidence, it can be admitted; the question then becomes the weight that should be assigned to it by the fact finder. See *Commonwealth v. Ford, supra,* 451 Pa. at 84, 301 A.2d at 857 (citing cases). On that point counsel was free to argue, as he did, that the sheath found by the officer was not clearly shown to have been appellant's and that it could have been placed there by other witnesses to the stabbing. We think the trial court could. properly conclude that the jury was capable of assessing the probative value of the sheath in light of all the surrounding facts.

■■ Next, appellant asserts that it was error to admit into evidence certain photographs of the victim and the victim's shirt. The question whether this type of evidence is admissible is one we have frequently encountered and the test to be applied is well established. It involves weighing the necessarily inflammatory nature of this evidence against its "essential evidentiary value." See, e. g., *Commonwealth v. Petrakovich,* 459 Pa. 511, 521, 329 A.2d 844, 849 (1974); *Commonwealth v. Ford,* 451 Pa. 81, 87, 301 A.2d 856, 859 (1973); *Commonwealth v. Powell,* 428 Pa. 275, 278–79, 241 A.2d 119, 121 (1968). This test applies both to the pictures and the other demonstrative evidence. See *Commonwealth v. Yount,* 455 Pa. 303, 317, 314 A.2d 242, 250 (1974).

This weighing process, however, is often difficult and we cannot say that the trial court here abused its discretion in assessing the balance in favor of admissibility. The evidence was not highly inflammatory; the two pictures of the body, for example, were in black and white, the blood around the wound had been cleansed before the pictures were taken, and the pictures showed only the victim's chest. As for its essential evidentiary value, an important factual issue in the

case was whether the victim was stabbed twice in deliberate fashion, or was killed in a struggle for the knife. The photographs showed two wounds close together and no additional scratches such as might have occurred in a struggle. The shirt, however, showed only one hole. This discrepancy was noted initially by defense counsel in cross-examining the coroner; the prosecution later introduced the shirt itself to show where the hole was in relation to the wounds. Given this evidentiary value of the items, and the very slim "likelihood of inflaming the minds and passions of the jurors" that the evidence in question shows, see *Commonwealth v. Powell, supra,* 428 Pa. at 279, 241 A.2d at 121, we cannot say it was error to admit into evidence the shirt and photographs.

The third trial error advanced involves the charge to the jury. We do not reach the merits of this claim, however, because it has not been properly preserved for appeal. Our Rules of Criminal Procedure, and our case law, require that unless specific objection is made to an alleged error in the charge, the error cannot be raised on appeal. See Pa.R. Crim.P. 1119(b); *Commonwealth v. Clair,* 458 Pa. 418, 326 A.2d 272 (1974). In this case appellant proposed six points for charge. The court reviewed these points at the end of his charge, affirming them in part. Immediately thereafter the judge asked whether counsel had any exceptions or additions. Defense counsel replied that he had none.

This case is thus directly controlled by *Commonwealth v. Hilton,* 461 Pa. 93, 334 A.2d 648 (1975). There, as here, defense counsel submitted points for charge and was given the opportunity to make corrections after the court finished its charge. There, as here, defense counsel stated he had no objections, apparently finding the court's instructions unobjectionable despite the refusal of the requested instructions. We accordingly held that the trial court's refusal to give two of the requested points for charge could not be raised on appeal.

The reasons for requiring specific objection after the charge, even where points for charge had previously been proposed, are apparent. Primarily, it ensures that the court

is given opportunity to avoid error. See *Commonwealth v. Sisak,* 436 Pa. 262, 269, 259 A.2d 428, 432 (1969). Here, as is so often the case, the court gave some of the requested instructions in modified form. Additional corrections might very well have avoided error.

### III

■ Appellant raises one claim with respect to post-trial rulings. Appellant claims he is entitled to a new trial in light of evidence discovered after the close of testimony. The evidence consists of a civil complaint, filed the day trial began, in which a witness for the Commonwealth claimed that the owner of the bar where the stabbing occurred had been negligent in serving liquor to the deceased, and alleged that the deceased was a man of "known intemperate habits" who was visibly intoxicated at the time. Appellant contends that this complaint demonstrates that the witness committed perjury at trial and that this perjured testimony was employed with the knowledge of the Commonwealth.

■ Appellant's claim is without merit. First, it does not appear that the complaint even contradicts the witness' testimony. Contrary to appellant's assertion, the witness never testified that the victim was sober on the night in question. Nor did the witness testify as to the victim's drinking habits; he merely testified that the victim's temperament was "about the same" whether he was drinking or not.

Second, appellant presents no more than a bare allegation that the Commonwealth knew about the civil complaint. Presentation of perjured testimony, or allowing perjury to go uncorrected at trial, is a serious matter, requiring reversal as a matter of constitutional law. See, e. g., *United States v. Agurs,* 427 U.S. 97, 103–04, 96 S.Ct. 2392, 2397, 49 L.Ed.2d 342 (1976); *Commonwealth v. Alston,* 430 Pa. 471, 243 A.2d 404 (1968). Appellant cannot succeed on such a claim without making any showing that, in fact, the Commonwealth acquiesced in, or knew, it was presenting perjured testimony.

██ Nor is this evidence such that it would entitle appellant to a new trial on the basis of our usual rule on after-discovered evidence. The evidence here simply does not satisfy the test for when such evidence requires a new trial. It is, at best, cumulative, given other witness' testimony about the victim's drinking, both on the night in question and before, and it certainly would not likely compel a different result. See, e. g., *Commonwealth v. Tervalon,* 463 Pa. 581, 586–87, 345 A.2d 671, 674 (1976) (citing cases); *Commonwealth v. Schuck,* 401 Pa. 222, 229, 164 A.2d 13, 17 (1960) (citing cases), cert. denied, 368 U.S. 884, 82 S.Ct. 138, 7 L.Ed.2d 188 (1961).

Judgments of sentence affirmed.

EAGEN, C. J., concurs in the result.

POMEROY, J., filed a concurring opinion.

MANDERINO, J., filed a dissenting opinion in which NIX, J., joins.

POMEROY, Justice, concurring.

I agree with the Court that the photographs and clothing in this case were properly admitted into evidence. Unfortunately, however, the majority opinion has once again misstated the applicable law. Compare, e. g., *Commonwealth v. Hilton,* 461 Pa. 93, 98–99, 334 A.2d 648, 651 (1975) (opinion announcing the decision of the Court), with *id.* 461 Pa. at 99, 334 A.2d at 651 (concurring opinion of Pomeroy, J., joined by Jones, C. J., and Eagen, O'Brien and Nix, JJ.).

In stating that a court, in deciding whether to admit into evidence a photograph of a corpse, must balance "the necessarily inflammatory nature of this evidence against its 'essential evidentiary value,'" opinion of the Court *ante* at ——, the majority misapprehends the teaching of a case it mistakenly cites in support of that proposition, *Commonwealth v. Petrakovich,* 459 Pa. 511, 329 A.2d 844 (1974). In *Petrakovich,* we stated that the "[a] photograph of a corpse is not inflammatory *per se* . . . it is generally the manner in which a corpse is displayed that causes photographs to be

emotionally charged." *Id.* 459 Pa. at 522, 329 A.2d at 849. That is quite different from stating that such a photograph is "necessarily inflammatory." Moreover, we held in *Petrakovich* that a court should deal with such photographs through a two-tiered analysis. The court's first task is to determine whether the photograph is inflammatory. If it is not, and if it is relevant, it is admissible just as is any other evidence that has probative value on a material issue. If, however, the photograph is found to be inflammatory, the court should proceed to the second step of the *Petrakovich* test and balance the evidentiary value of the photograph against " 'the likelihood of inflaming the minds and passions of the jurors.' " *Id.* 459 Pa. at 521, 329 A.2d at 849, *quoting Commonwealth v. Powell,* 428 Pa. 275, 279, 241 A.2d 119, 121 (1968). See also *Commonwealth v. Hilton, supra,* 461 Pa. at 100, 334 A.2d at 652.[1]

In the case at bar there was no need whatever for the trial court to proceed to the second step. Here the photographs were black-and-white and showed only the victim's chest and two knife wounds that had been cleaned of almost all blood. Given the issue of whether the victim was deliberately stabbed twice or was killed accidentally in a struggle, the photographs were manifestly relevant to resolve a factual question in dispute and to indicate that the killing was intentional.[2]

The majority compounds its analytical error when it asserts that the second part of the *Petrakovich* test must also

[1] Thus in *Commonwealth v. Garrison,* 459 Pa. 664, 331 A.2d 186 (1975), obviously inflammatory color slides of the deceased had little value in a case where an intentional killing was clearly shown by the defendant's own statement and other testimony, and the only real issue was insanity. After applying the *Petrakovich* test, this Court, in an opinion by Mr. Justice NIX, ordered a new trial. See also *Commonwealth v. Powell, supra,* 428 Pa. at 279, 241 A.2d at 121 ("a clear felony murder case where the force used and the nature and extent of the injuries have no bearing in a finding of . . . felony murder.").

[2] Similarly, the black-and-white photograph of the victim's heart, showing the extent of the wounds, was relevant to show a deliberate killing and the length of the knife used, another issue at trial.

be applied, *ab initio,* to a blood-stained shirt. No reason is advanced as to why the presence of dried blood on an item of real evidence renders it *per se* inflammatory, probably because there is no more basis for such an assumption with respect to demonstrative evidence than there is for such an assumption relative to a photograph of a corpse. Here again the evidence was relevant to show the relation of the hole created by the knife to the wounds in the chest. Yet the opinion of Mr. Justice ROBERTS ignores the proper evidentiary test—whether the exhibit is relevant—and the sound discretion of the trial court in applying the test. In *Commonwealth v. Chavis,* 357 Pa. 158, 170, 53 A.2d 96, 102, *cert. denied,* 332 U.S. 811, 68 S.Ct. 104, 92 L.Ed. 389 (1947), we said: "A careful judge will not admit such evidence when it has no relevancy to any issue in the case and when the purpose of its admission is obviously to stir up the emotions of the jurors." That remains the standard today, the majority's assertion to the contrary notwithstanding. See, *e. g., Commonwealth v. Garnett,* 458 Pa. 4, 7, 326 A.2d 355 (1974).[3]

Once a photograph is found by the trial judge to be of an inflammatory nature, it makes sense to balance the evidentiary value of the proffered exhibit against the possibility of prejudice because of its effect on the jury. It should not be overlooked, however, as Mr. Justice ROBERTS' opinion does, that in gauging the possibility of prejudice, the court should bear in mind the role that cautionary instructions can play by way of forewarning the jury that what it will see is distasteful and unpleasant, but that these qualities are not to sway the judgment of the jury as to the guilt or innocence of the defendant. Such instructions, by focusing the jury's attention on the reasons for which evidence is admitted, would go far to neutralize any emotional or prejudicial impact the photograph might have: *See* Shaffer, Judges,

3. *Commonwealth v. Yount,* 455 Pa. 303, 317, 314 A.2d 242, 250 (1974), provides no support for the majority's view, for a similar assertion in *Yount* relied on *Commonwealth v. Ford,* 451 Pa. 81, 85, 301 A.2d 856, 857–58 (1973). *Ford,* however, enunciated a relevance standard that emphasized the discretion of the trial judge, and held that a knife that had not been *positively* identified as the murder weapon had been properly admitted into evidence.

Repulsive Evidence and the Ability to Respond, 43 Notre Dame Law, 403, 509–10 (1968).

In a world where violence is depressingly common and the results of violence are often portrayed, and sometimes seemingly extolled by the news and entertainment media, I am unable to understand by what logic we must deem jurors to be as squeamish, susceptible to shock, and irrational as the majority apparently deems them to be. More important, however, is the majority's reluctance to sanction the use of a type of evidence that often speaks better than most witnesses can to crucial factual issues that juries sit to decide, as I think the photographs did in this case. Many of the results of homicide are distinctly unpleasant, but the jury must have evidence as probative as can be found to enable it to decide properly whether an accused is criminally responsible for those results. The majority's apparent assumptions that jurors will forget about the presumption of innocence upon seeing a photograph of a corpse, and that, even if aided by trial court instructions, they will not be able to view such evidence and do their work dispassionately, are patronizing notions that I do not share.

MANDERINO, Justice, dissenting.

I dissent. The Sixth Amendment's guarantee of an impartial jury requires that the jury represent a fair cross-section of the community. *Taylor v. Louisiana*, 419 U.S. 522, 533, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975). Appellant argues that a large segment of the population was not represented on his jury because the jurors were selected only from voter lists. I agree.

Substantial segments of our population do not vote and hence are not registered on voter lists. It must follow that any jury pool selected entirely from voter lists cannot possibly represent a fair cross-section of the community as required by the Sixth Amendment.

Other sources are readily available for assembling a jury pool which would represent the general makeup of that community. Lists of water, gas, electricity and telephone

consumers are available, as are census lists, social security enrollments, and other commercial and governmental compilations. These lists are available on computer tapes and compiling a nearly complete list of those eligible for jury duty would not involve time-consuming or expensive procedures. The scanning of lists by computer and elimination of duplicate names is a relatively easy process. Such lists can easily be utilized to put together a list of prospective jurors reflective of the entire community. With such resources available, a method of jury selection which is unrepresentative must be considered a violation of the accused's constitutional rights.

NIX, J., joins in this dissenting opinion.