J-S63014-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| KUEON DIEDRICK, | |
| Appellant | No. 1809 MDA 2013 |

Appeal from the Judgment of Sentence August 28, 2013
In the Court of Common Pleas of Berks County
Criminal Division at No(s): CP-06-CR-0002343-2013

BEFORE:  BOWES, PANELLA, and PLATT,* JJ.

MEMORANDUM BY BOWES, J.:                **FILED DECEMBER 08, 2014**

Kueon Diedrick appeals from his August 28, 2013 judgment of sentence of twelve to twenty-four months incarceration, which was imposed following his conviction by a jury of simple assault and terroristic threats. Appellant claims that his convictions were against the weight of the evidence and that the trial court improperly instructed the jury on the terroristic threats charge. We affirm in part and reverse in part, and remand for a new trial on the terroristic threats charge.

The trial court delineated the following facts that gave rise to Appellant's conviction:

_____

* Retired Senior Judge assigned to the Superior Court.

In the early morning hours of April 7, 2013, Appellant was present at Vice Martini Lounge, a bar located at 528 East Lancaster Avenue in Shillington, Berks County. At some point during the evening, a friend of Appellant tried to exit the building with a drink in hand. The friend was angered when a security guard asked him to put the glass on top of a table near the front entrance. Appellant angrily "walked up on" the security guard and was "starting to give him some lip." Another security guard escorted Appellant out of the establishment. Security guards demanded multiple times that Appellant leave the property. Police, already outside the building to conduct surveillance and to maintain order, informed Appellant that he would need to leave the premises or be at risk of trespassing. The officers repeated this instruction multiple times. Officer Duane Witman testified that Appellant drove away but quickly returned:

**Q:** And about how many times did you have to tell [Appellant] to leave?

**A:** It was several. I escorted him to his vehicle, and he kept turning around. . . . He kept turning around to like go back, and I kept telling him, listen, just leave. It is not worth it. Go away. He walked over and got into a silver Nissan Altima. And I thought that was the end of it. But as I returned to the front of Vice Martini Lounge he drove his vehicle around me and got out of his car again. And this time he parked in front of the front doors.

**Q:** And then did you see the car leave?

**A:** Eventually it did leave. He got into his vehicle. Another black male got into the vehicle, the passenger's side. He actually got out of the vehicle a second time, and I said I told you to leave. Now leave. And then the vehicle he got back in and the vehicle sped away.

This occurred around 2:00 am, the bar's closing time.

That evening's staff – eight to ten individuals – left the bar at approximately 2:15 a[.]m. The police were still outside but indicated that they had to leave because of another call. Within minutes of the police departing, Appellant pulled up in a silver Nissan Altima and parked perpendicularly across several parking spaces near the entrance of the bar. Appellant deactivated the

- 2 -

vehicle's lights and exited the vehicle, brandishing a handgun in his left hand – "walking up and waving it". The bar's staff ushered everyone present to the back of the bar. Appellant was recognized by staff as having been involved in the earlier incident, and also from his patronage of the bar on several previous occasions.

Appellant demanded to see the security guard who had earlier removed him from the bar. On-scene witnesses described Appellant as angry and clearly looking for a confrontation:

**Q:** What did he say to you?

**A:** He wants the big man out. He wanted to settle this and that.

**Q:** Can you slow down and repeat that?

**A:** He was calling the one security guy out that kicked him out.

**Q:** And what did he say?

**A:** He said he wants him out, step up. He pretty much wanted to fight him out front.

**Q:** Do you remember any specific things that he said?

**A:** Big man. Kept saying big man. I want big man, I want big man now. He has no – he doesn't have balls now to come outside now, stuff like that.

**Q:** And were you fearful at all?

**A:** When he first walked up, yeah. When I saw the gun. I wasn't the main target, but I wasn't sure. I don't know who he is. When he put it away I was a little better, but he still had it on him. And when he asking for big man, if he would have came out, I don't know what would have happened. He obviously had [a gun] on him.

Staff members insisted that the guard in question had already left, though he had actually been hidden in the back of the bar. After hearing this, Appellant put the handgun behind his back, placing it "in his waistband up his pants." Appellant

- 3 -

returned to his car and got in the driver's seat. An employee testified as to what happened next:

> They came right in front of us in the fire lane, and then turned back into the parking lot. We have a shack that sells newspapers and everything in our parking lot. It is about 50 feet from – I mean 50 yards from us. And he pulls in between the shack and the establishment, and fired one into what I believe was the air from the driver's side from the firearm, and then took off through the stop sign and stop lights on Lancaster Avenue, going back towards Reading.

> At least one witness also saw the muzzle flash. Defendant's car was pulled over shortly thereafter, at 2:37 a[.]m., approximately three blocks from the bar. No gun or shell casings were recovered.

Trial Court Opinion, 12/6/14, at 3-5 (citations omitted).

The jury found Appellant guilty of simple assault and terroristic threats; the trial court found Appellant guilty of driving while operating privilege is suspended or revoked and disorderly conduct. Appellant was sentenced to concurrent terms of incarceration of twelve months to twenty-four months for the simple assault and terroristic threats charges. He filed a post-sentence motion alleging that the verdict was against the weight of the evidence and challenging the harshness of his sentence, which was denied by order dated September 12, 2013.

Appellant filed a timely appeal and complied with the trial court's order to file a Pa.R.A.P. 1925(b) concise statement of errors complained on appeal, and subsequently amended that concise statement. The trial court

authored its 1925(a) opinion addressing all issues.   On appeal, Appellant

pursues two issues:

> 1.    Whether the Trial Court erred by not granting a new trial on the basis that the guilty verdicts for [sic] were contrary to the weight of the evidence, where the inconsistent testimony of the witnesses was the only evidence linking the Defendant to the alleged crime, and no firearm, shell casing, or other evidence were found and or presented as to the defendant's involvement of the crimes charged and several inconsistencies regarding type of automobile and time of the alleged crime were presented at trial.
>
> 2.    Whether the Trial Court erred by instructing the jury as the elements of terroristic Threats, *18 Pa C.S.A. § 2706(a)(3)*, where the Information was amended to charge defendant with 18 Pa. C.S.A. § 2706(a)(1), and the trial court failed to give the jury the proper instruction prior to deliberation thereby causing prejudice to the Defendant because the jury was not instructed on the proper law to apply to the facts.

Appellant's brief at 6.

When reviewing a challenge of the weight of the evidence we apply the

following standard:

> A motion for a new trial based on a claim that the verdict is against the weight of the evidence is addressed to the discretion of the trial court.  A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion.  Rather, "the role of the trial judge is to determine that 'notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.'"  It has often been stated that "a new trial should be awarded when the jury's verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail.

***Commonwealth v. Clay***, 64 A.3d 1049, 1054 (Pa. 2013) (internal citations

omitted).

Appellant claims that the trial court erred because the weight of the evidence did not support his simple assault and terroristic threats convictions. He maintains that his convictions were based on "incredible testimony" concerning his possession of a firearm, uncertain and vague identification evidence, and inconsistent witness testimony. Appellant's brief at 17. He argues that the eyewitness testimony offered by the security personnel, Jason Spotts and Richard Nesbitt, lacked sufficient credibility to sustain his guilty verdicts. Appellant asserts that Spotts was speaking on the telephone and distracted when he ostensibly observed Appellant with a firearm. Nesbitt testified that Appellant was driving a white vehicle, although Appellant was driving a silver vehicle when he was stopped by police. Appellant focuses on the fact that neither Spotts nor Nesbitt could specifically describe the firearm in question. *Id.* at 18. Finally, he points out that there was a discrepancy in the timing of events presented at trial, and a lack of physical evidence to support the testimony regarding his possession of a firearm. *Id*.

The trial court correctly noted that it cannot order a new trial based on the weight of the evidence unless the "verdict is so contrary to the evidence as to shock one's sense of justice." Trial Court Opinion, 6/10/14, at 8. Additionally, the trial court recognized that the "credibility of witnesses and the weight to be accorded to the evidence produced are within the province

of the trier of fact, who is free to believe all, some or none of the evidence." *Id*. The court characterized the testimony deemed inconsistent by Appellant as "almost entirely consistent" and found that minor discrepancies in the timing of the events "only lends credence to the testimonies." *Id*. The trial court concluded that the verdict did not shock one's sense of justice and was not contrary to the weight of the evidence.

We find that the trial court applied the appropriate legal standard in ruling on the weight of the evidence claim. Appellant has not provided any compelling support for his claim that the trial court abused its discretion, and it is not the role of this Court to reweigh the credibility of witnesses. Thus, Appellant's challenge to the weight of the evidence fails.

Appellant's second issue involves error in the trial court's terroristic threats instruction to the jury. When a reviewing court considers a challenge to a jury instruction, the court must first review the charge as a whole, not just isolated portions, to determine if it fairly conveys the legal principles at issue. *Commonwealth v. Sepulveda*, 55 A.3d 1108, 1141 (Pa. 2012); *Commonwealth v. Jones*, 683 A.2d 1181, 1196 (Pa. 1996). A jury instruction will be found to be proper if it "clearly, adequately and accurately reflects the law." *Sepulveda*, *supra* at 1141. We afford the trial court broad discretion when choosing the language and phrasing of jury instructions calculated to complicated legal concepts to the jury. *Id*. A jury charge should not be rigidly inspected by a reviewing court, and reversible

error should not be found for every technical inaccuracy; error should only be found if taken as a whole, the jury charge inadequately and inaccurately set forth the applicable law. **Commonwealth v. Daniels**, 963 A.2d 409, 430 (Pa. 2009); **Commonwealth v. Thompson**, 647 A.2d 217 (Pa. 1996).

The Commonwealth argues that Appellant's challenge to the terroristic threats charge is waived because he did not object below. According to the Commonwealth, "no portions of the charge nor any omissions therefrom may be assigned as error, unless specific objections are made thereto before the jury retires to deliberate." Pa.R.Crim.P. 647(B). Furthermore, "issues not raised in the lower court are waived and cannot be raised for the first time on appeal." Pa.R.A.P. 302(a). The trial court agreed with the Commonwealth and concluded that, although Appellant had ample opportunity to object to the jury instruction, he chose not to do so and any objection is waived. We disagree.

At the close of jury charge, the court asked counsel, "are there any additions or corrections?" N.T., 8/7/13, at 124. Defense counsel asked permission to address the court at sidebar, which the court granted. **Id**. Counsel took issue with a portion of the trial court's instruction that was critical of defense counsel's closing argument regarding the burden of proof

and to which the Commonwealth had not objected.[1]  The court countered that it would have sustained a Commonwealth objection for defense counsel's "grotesquely inappropriate" argument, which was "almost to a level that would support disciplinary action[,]" and noted defense counsel's objection for the record.  *Id*. at 125.  At that moment, the Commonwealth's attorney spoke up and the following exchange occurred:

> [The Commonwealth]: I have one thing, your Honor.  The charge of terroristic threats with the (a)(1) was the commit [sic] any crime of violence with the intent to terrorize another.  You read the (a)(3) section.
>
> The Court: Well that is what the Information says.
>
> [The Commonwealth]: I know.  But we amended it in court.  Wording and/or employees.  And we amended the section of count 3 to the (a)(1).
>
> The Court: Well that was not apparent from the documents that I have.  Let me see.  Why didn't you bring this up after I gave you copies at noon?
>
> [The Commonwealth]: I missed it until you read it.
>
> The Court: Well, you are going to live with it.

N.T., 8/7/13, at 125-26.

_____

[1]  Defense counsel was objecting to the trial court's *ad lib* addition to the charge on the beyond a reasonable doubt standard.  The trial court informed the jury: "No part of that concept involves the production of evidence strong enough that you would convict your mother and father of offenses or your best friend.  One of the reasons that we ask jurors the questions that we ask you at the outset here is if you were related to anyone, or you had a close personal relationship with them is because we don't put jurors in the position to do that."  N.T., 8/7/13, at 112.

Appellant concedes that he did not specifically object to the charge. However, he maintains that the Commonwealth, in objecting based on the parties' prior stipulation and the entry of an order amending the information, was speaking for both parties. The Commonwealth's objection then was the same as Appellant's alleged error herein, and Appellant contends that the Commonwealth's objection was sufficient to bring this error to the trial court's attention so that it could be corrected before the jury was dismissed to deliberate. **Commonwealth v. Martinez**, 380 A.2d 747 (Pa. 1977) (recognizing primary purpose of Pa.R.Crim.P. 119(b), predecessor to Pa.R.Crim.P. 647(B), was to ensure that the trial court was provided the opportunity to avoid error). He argues that the purpose of the objection requirement of Rule 647(B) was satisfied by the Commonwealth: to avoid appellate review of easily correctable errors and issues. **Commonwealth v. Pressley**, 887 A.2d 220, 224 (Pa. 2005). Appellant maintains that an objection was timely made, the error was brought to the court's attention, the court declined to correct it, and that any further objection on his part would have been superfluous.

We agree with Appellant that the Commonwealth merely took the lead in pointing out an error regarding a matter to which both parties and the trial court had earlier agreed. Furthermore, Pa.R.Crim.P. 647(B), by its terms, only requires a specific objection to the charge to preserve an issue involving a jury instruction. That rule provides in pertinent part: "(B) No

portions of the charge nor any omissions therefrom may be assigned as error, unless specific objections are made thereto before the jury retires to deliberate. All such objections shall be made beyond the hearing of the jury." Nowhere in the rule is it stated that the party complaining on appeal must be the same party who objected below.[2] The defense did not oppose the Commonwealth's efforts to seek correction of the instruction and any defense objection would have been duplicative. The purpose of the objection requirement was satisfied by the discussion at sidebar: it provided an opportunity for the trial court to correct the mistake. Objection by defense counsel would only have served to further anger the court that had just soundly rebuked him. Thus, we decline to find the issue waived, and we turn to the merits.

Appellant argues that the trial judge improperly instructed the jury on 18 Pa.C.S. § 2706(a)(3), instead of subsection (a)(1). He contends this is reversible error because the jury was not provided with the correct law governing the crime charged. Appellant was initially charged with terroristic threats, 18 Pa.C.S. § 2706(a)(3). By court order, the charge was amended

---

[2] Our Supreme Court noted in **Commonwealth v. Pressley**, 887 A.2d 220, 224 (Pa. 2005), that, "[t]he Rules of Criminal Procedure are to 'be construed in consonance with the rules of statutory construction[,]' Pa.R.Crim.P. 101(C), which require, *inter alia*, that provisions be interpreted in accordance with the plain meaning of their terms. **See** 1 Pa.C.S. § 1903(a)."

to terroristic threats pursuant to 18 Pa.C.S. § 2706(a)(1). Order of Court, 8/6/13, at 1. The crime of terroristic threats is defined as follows:

> **(a) Offense defined.** A person commits the crime of terroristic threats if the person communicates, either directly or indirectly, a threat to:
>
>> (1) commit any crime of violence with intent to terrorize another;
>>
>> (2) cause evacuation of a building, place of assembly or facility of public transportation; or
>>
>> (3) otherwise cause serious public inconvenience, or cause terror or serious public inconvenience with reckless disregard of the risk of causing such terror or inconvenience.

18 Pa.C.S. § 2706.

The trial court read the following instruction to the jury:

> The defendant has also been charged with the offense of terroristic threats. To find the defendant guilty of this offense, you must find that the following elements have been proven beyond a reasonable doubt. First, that the defendant communicated either directly or indirectly a threat. The term communicate means in the context of the evidence in this case conveyed in person.
>
> Second, the defendant communicated the threat in order to cause serious public inconvenience, or caused terror or serious public inconvenience with reckless disregard of the risk of causing such terror or inconvenience. A person acts recklessly when he consciously disregards a substantial and unjustifiable risk that such terror or inconvenience will result from his conduct.
>
> The risk must be of such a nature and degree that considering the nature and intent of the defendant's conduct and the circumstances known to him, its disregard involves a gross deviation from the standard of conduct that a reasonable person would observe in the defendant's situation.

N.T., 8/7/13, at 115-16.

- 12 -

This instruction was sourced from the Pennsylvania Suggested Standard Criminal Jury Instructions for 18 Pa.C.S. § 2706(a)(3). The suggested standard jury instruction for subsection (a)(1) provides that in order to find the defendant guilty of the offense of terroristic threats, the jury would have to find the following "elements have been proven beyond a reasonable doubt:

> *First*, the defendant communicated, either directly or indirectly, a threat. The term "communicates" means conveys in person or by written or electronic means, including telephone, electronic mail, Internet, facsimile, telex, and similar transmissions.
>
> *Second*, the defendant communicated the threat to:
>
> a. commit any crime of violence, specifically *[crime of violence]*, with intent to terrorize another;

Pa.SSJI (Crim.) 15.2706(a) (brackets omitted).

Appellant asserts that the record clearly reflects that the trial court did not accurately state the law applicable to subsection (a)(1) when instructing the jury prior to deliberation. He argues that the failure to charge the jury under the proper subsection of 18 Pa.C.S. § 2706 was prejudicial and constituted reversible error. Appellants brief at 20. The Commonwealth does not address the merits of Appellant's claim.

On the record before us, it is apparent that the jury instructions as a whole did not apprise the jury of the elements that were required to be proven beyond a reasonable doubt for the subsection (a)(1) terroristic

threats offense charged.[3]  Specifically, the jury was not told that a conviction of terroristic threats required communication of a threat to commit a crime of violence with the intent to terrorize another.  In contrast, subsection (a)(3) focuses on a general threat communicated in order to cause public inconvenience, or with reckless disregard of the risk of causing inconvenience and terror.  The Commonwealth argues, however, that since Appellant was sentenced concurrently to imprisonment on the simple assault and terroristic threats convictions, and Appellant does not challenge the instructions regarding simple assault, the erroneous jury instruction on terroristic threats constitutes harmless error.  Commonwealth's brief at 11.

The Commonwealth's harmless error argument is meritless.  Although Appellant's time spent incarcerated may be unaffected by this error, a conviction based on a legally erroneous jury instruction is not harmless.  Thus, we conclude that since the jury was improperly instructed on the law applicable, and the error was not harmless, a new trial is required.

Judgment of sentence on the simple assault conviction is affirmed.  Judgment of sentence entered on the terroristic threats conviction is

---

[3]  The record reflects that the trial court also sent out with the jury a three-page document marked as Court's Exhibit 1, which the court represented contained the "word-for-word description of the elements of the two offenses that the defendant is charged with here."  N.T., 8/7/13, at 127.  The court then excused the jury to deliberate.  Court's Exhibit 1 erroneously contained the elements of terroristic threats under subsection (a)(3), not subsection (a)(1) as charged.

reversed and we remand for a new trial on this charge. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/8/2014