396 A.2d 1254

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Ronald DESSUS, Appellant.**

Superior Court of Pennsylvania.

Submitted Sept. 29, 1977.

Decided Dec. 29, 1978.

Petition for Allowance of Appeal Granted August 13, 1979.

446

Calvin S. Drayer, Jr., Assistant Public Defender, Norristown, for appellant.

James A. Cunningham, Assistant District Attorney, Norristown, for Commonwealth, appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

JACOBS, President Judge:

This appeal is from a judgment of sentence which was imposed following the conviction of appellant, Ronald Dessus, on four assault charges.[1] Already serving a term of imprisonment for life, appellant was sentenced to a concurrent life term. He now appeals from that sentence, and raises eleven allegations of error.[2] Those issues, briefly stated, are as follows: 1) the mandatory life sentence required upon conviction of assault by life prisoner[3] violates the United States and Pennsylvania Constitutions; 2) the trial court erred by permitting cross-examination of defense witnesses regarding prior criminal records; 3) the trial court erred by excluding a physician's letter and precluding pretrial discovery of the victims' personnel and medical records; 4) trial counsel was ineffective for failing to subpoena the physician and the personnel and medical records; 5) a biased and confusing jury charge denied appellant a fair trial; 6) the use of a non-attorney district justice in appellant's preliminary hearing denied him due process; 7) appellant's

1. Appellant was convicted of simple assault, aggravated assault, assault by prisoner, and assault by life prisoner pursuant to the Pennsylvania Crimes Code, 18 Pa.C.S.A. §§ 2701–2704, respectively.

2. Appellant had filed "post verdict motions" wherein trial counsel listed 53 reasons in support of the motions. A concise statement of matters complained of on appeal was filed subsequent to sentencing, but it merely repeated the 53 reasons and added two ineffective assistance of counsel issues. Since appellant has decided to brief only eleven issues before this court, we may not consider the other points since they are deemed waived. *Commonwealth v. Peacock*, 246 Pa.Super. 212, 369 A.2d 886 (1977).

3. 18 Pa.C.S.A. § 2704, which reads:
   Every person who has been sentenced to death or life imprisonment in any penal institution located in this Commonwealth, and whose sentence has not been commuted, who commits an aggravated assault with a deadly weapon or instrument upon another, or by any means of force likely to produce serious bodily injury, is guilty of a crime, the penalty for which shall be the same as the penalty for murder of the second degree.

demurrer was erroneously denied because the Commonwealth failed to introduce sufficient evidence to support the charges of aggravated assault and assault by life prisoner; 8) the trial court erred in denying individual voir dire on the subject of racial prejudice; 9) the trial court improperly denied defense motions to subpoena all prison records regarding other assaults by prisoners; 10) trial counsel was ineffective for failing to personally subpoena the records; and 11) the trial court improperly denied appellant's challenge to the jury selection process of Montgomery County. Because we find all of appellant's arguments to be without merit, we affirm the decision of the lower court.

Appellant was convicted as a result of a scuffle which occurred at the State Correctional Institution at Graterford. During his confinement, appellant earned a high school diploma and a bachelor's degree. He was qualified to teach several courses to fellow inmates, one of which was typing. On January 26, 1976, appellant was preparing to begin the typing course. He found the typing classroom padlocked, and went to the prison school office to inquire into the situation. During an exchange of words, appellant became provoked and assaulted two of the teachers present in the room. One of the teachers, John Moskal, was knocked unconscious and sustained extensive injuries, which have required lengthy rehabilitation. The other victim, Ernest Bello, suffered a fractured cheek and was hospitalized for several days.

I

Appellant's first argument goes to the constitutionality of the mandatory life sentence imposed upon conviction of assault by life prisoner. He contends that a mandatory life sentence violates the Eighth and Fourteenth Amendments of the United States Constitution and Article 1, Section 13 of the Pennsylvania Constitution because it fails to allow for consideration of mitigating or aggravating circumstances surrounding the individual offender's charge. Although appellant attempts to distinguish it, the case of

*Commonwealth v. Bryant*, 239 Pa.Super. 43, 361 A.2d 350 (1976) is dispositive of the issue.[4] Our court determined that the mandatory sentence was not unconstitutional:

> . . . the legislature has sought fit to specify mandatory life imprisonment as punishment for assaults committed by prisoners already serving life terms. We do not believe that such punishment is so disproportionate to the offense as to amount to cruel and unusual punishment. Such punishment is clearly intended to serve as a deterrent, and it is not the province of this Court to substitute its judgment for the judgment of an assembly properly exercising its legislative powers.

239 Pa.Super. at 46, 361 A.2d at 352.

We find nothing in appellant's argument to convince us that *Bryant* was wrongly decided, or that it is inapplicable to the facts here.

## II

In his second argument, appellant urges that the trial court erred in permitting cross-examination of defense witnesses on their prior criminal records. At trial, appellant had called four fellow inmates to testify in his behalf. The prosecution questioned each of these character witnesses, three of whom had been convicted of robbery, burglary, and/or larceny and receiving stolen goods, and one who was imprisoned for second degree murder.[5]

It is well established that Pennsylvania courts have "permitted the use of prior convictions of felonies or misde-

---

**4.** Appellant contends that unlike the appeal in *Bryant*, he "does not challenge the constitutionality of the life sentence per se, but that of the nature of the sentence for assault by a life prisoner." Appellant's Brief at 8. This semantic distinction is unpersuasive, for the appellant in *Bryant* raised the same objections to the statute in much the same language as appellant employs here. In fact, appellant's brief frames his argument completely in terms of the "constitutionality of the life sentence per se."

**5.** Although appellant does not raise the issue of remoteness of the convictions, we note that of the numerous convictions brought out in cross-examination, none was more than six years old.

meanors in the nature of *crimen falsi* to impeach the credibility of a witness." *Commonwealth v. Katchmer*, 453 Pa. 461, 464, 309 A.2d 591, 593 (1973). The crimes of which the defense witnesses were convicted certainly fit within the classification of admissible crimes. The lower court did not, therefore, err when it permitted questioning into the witnesses' backgrounds.

### III

The third argument advanced by appellant concerns the decisions of the lower court to exclude a letter written by a physician and to deny pretrial discovery of certain prison records. The letter in question, found in prison employment files, was written by a physician who had treated one of the victims, John Moskal. It was offered by appellant to show that the injuries sustained by Moskal were not as serious as he had implied during testimony.[6] Appellant's basis for admitting the letter is the Pennsylvania Uniform Business Records as Evidence Act of 1939, May 4, P.L. 42, No. 35, §§ 1–4, 28 P.S. §§ 91a–d Section 91b provides:

> A record of an act, condition or event shall, in so far as relevant, be competent evidence if the custodian or other qualified witness testifies to its identity and the mode of its preparation, and if it was made in the regular course of business at or near the time of the act, condition or event, and if, in the opinion of the court, the sources of information, method and time of preparation were such as to justify its admission.

He contends that the letter qualifies as a business record in that it was "filed in the normal course of prison business adjunct to Moskal's claim for workmen's compensation." Appellant's Brief at 15. However, the custodian of the records at Graterford could not show that the letter had been so prepared. Appellant's offer of proof as to the custodian's proposed testimony failed to show the mode of

---

**6.** The letter, written in May of 1976, stated that Mr. Moskal no longer needed to wear a cervical collar which he later wore during the trial in July, 1976.

the letter's preparation or the authenticity of the physician's signature. Lower court opinion at 16. Moreover, even if the validity of the writing could have been shown, the custodian was unable to testify "that the writing was actually made . . . at or near the time of [the physician's] examination of the individual in question [nor] that it was his custom in the regular course of his professional practice to make such a record." *Masterson v. Pennsylvania R. Co.,* 182 F.2d 793, 797 (3d Cir. 1950). That case, and *Cromling v. Pittsburgh and Lake Erie R. R. Co.,* 327 F.2d 142 (3d Cir. 1964) have held that letters from physicians, presented to employers for the purposes of filing employee benefits claims, "clearly [do] not qualify as . . . business record[s] within the meaning of the . . . Pennsylvania Uniform Business Records as Evidence Act." *Cromling,* 327 F.2d at 146.

■ We agree with the lower court that the letter was inadmissible in that it was not a business record.

Appellant adds a second aspect to this argument, i. e. the lower court erred in denying pretrial discovery of the victims' personnel and medical records contained in prison files.

■ We must agree with the Commonwealth and the lower court that the issue may not be considered on appeal. Although appellant raised it in post-trial motions, he failed to brief and/or orally argue the issue before the lower court.

■ Our appellant courts have "insist[ed] that issues are to be properly preserved for appellate review both to assure a correct disposition of the merits and to conserve judicial resources." *Benson v. Penn Central Transportation Co.,* 463 Pa. 37, 42, 342 A.2d 393, 395 (1975). Appellate review must be preceded by an opportunity for the lower court to correct any trial errors. Just as an issue not briefed for this court can be deemed to be abandoned, *Commonwealth v. Peacock,* 246 Pa.Super. 212, 369 A.2d 886 (1977), we feel that an issue not briefed for a lower court, but raised on appeal as an afterthought, can also be abandoned. We have recently held that failure to comply with local rules

concerning briefing of post-trial motions will result in waiver of the right to appeal. *Schneider v. Albert Einstein Medical Center,* 257 Pa.Super. 348, 359, 390 A.2d 1271, 1277 (1978). Although we have not been referred to such a local rule in Montgomery County, we note the language of a trial court decision in that county: "This court refuses to consider issues not briefed or argued by the moving party, even though those issues were specifically identified in post-verdict motions," citing *Commonwealth v. Webb,* 237 Pa.Super. 131, 138, 346 A.2d 574, 579, at fn. 3 (1975) (dissenting opinion). *Commonwealth v. Lee,* 102 Montg.Co.L.R. 1, 3 (1976).

## IV

As a corollary to his third argument, appellant contends that trial counsel was ineffective for failing to subpoena the physician and the prison records excluded by the trial court. After the letter was held to be inadmissible, counsel made an attempt to have the physician appear. However, the physician was away on vacation, and would not have been available until the following Monday, July 19 (his appearance was sought on Thursday, July 15).

The test for determining whether counsel was ineffective is stated in *Commonwealth ex rel. Washington v. Maroney,* 427 Pa. 599, 235 A.2d 349 (1967); the standard is whether the course chosen had some reasonable basis to effectuate the client's interest. Here, it cannot be said that counsel was ineffective, for he did make an attempt to have the physician appear. The court denied counsel's request to delay the trial for several days, and counsel's decision not to pursue that matter was not a course of action which had no reasonable basis.

We also agree with the lower court's determination that even if counsel's actions could be deemed ineffective, the error was harmless beyond a reasonable doubt. Lower court opinion at 17. Appellant sought to introduce the physician's letter to show that no serious bodily injury was caused to

the victim, and that the assault was simple rather than aggravated. However, even if the letter had been received in evidence, it would only have shown that in one doctor's opinion, Moskal's condition had improved to the point of not needing a collar in May. This does not affect the testimony that serious injuries were inflicted in January on both Mr. Moskal *and* the other victim, Mr. Bello.

Appellant also alleges that trial counsel was ineffective for failing to subpoena the victims' personnel and medical records from the prison. Pretrial discovery of those records had been denied by the trial court. Using the test of *Commonwealth ex rel. Washington v. Maroney,* 427 Pa. 599, 235 A.2d 349 (1967), counsel's choice of action in not pursuing discovery efforts cannot be considered unreasonable. Counsel only sought access to the records, not a complete production of files. N.T. July 7, 1976, at 20. When his request was turned down, it was reasonable for him to choose not to pursue their production. He obviously decided upon another course of action to effectuate his client's interest; we have no basis to say that this was unreasonable.

## V

Appellant objects that the jury charge was biased and that the definition of the offenses was so confused as to deny him a fair trial. In his brief, he specifically refers to three aspects of the charge: if the jury found the defendant guilty of simple assault, they must also find him guilty of assault by prisoner (N.T. Vol. III at 147); that the charges on simple and aggravated assault were "really quite simple" (N.T. Vol. III at 162); and that the jury had to reach a unanimous verdict (N.T. Vol. III at 154).

The first specific objection misstates the court's charge by presenting it out of context. The judge was not directing that guilt of one charge equalled guilt of another; rather, he was emphasizing to the jury that a common

element ran through the charges, and that their deliberations would be easier if they would follow a logical progression.[7] The charge in this respect was not confusing.

Bias is asserted as the error in charging that the distinction between simple and aggravated assault was "really quite simple." Although appellant raised this in post-trial motions, nowhere on the record did trial court raise a timely, specific objection to this statement as required. *Commonwealth v. Keysock*, 236 Pa.Super. 474, 345 A.2d 767, 769 (1975). Therefore, we must find that this particular issue has not been preserved for appellate review.

Appellant's third argument concerns a statement in the charge regarding a unanimous verdict. It is true that the trial judge stated "your verdict has to be unanimous." However, this one sentence cannot be taken out of context. We have carefully reviewed the two pages of charge regarding the reaching of verdicts (N.T. Vol. III at 130–131), and find that the charge as a whole was not so worded as to compel the jury to arrive at a decision. The charge stressed that "you must not surrender any honest conviction as to the weight or effect of the evidence solely because of the opinion of any fellow juror or jurors or for the mere purpose of returning a verdict." (N.T. Vol. III at 131).

The jury charge was not improper, and appellant was not denied a fair trial.

7. The complete paragraph from which the sentence was taken reads as follows:

> Now, if you have already passed upon the question of simple assault and decided that charge, you will have decided it for this purpose as well, and you will not have to go back over that ground as to this element in the charge of assault by prisoner. And that is why I suggested to you if you start with simple assault, proceed to aggravated assault and then tackle the question of assault by prisoner and assault by life prisoner. Because, some of your work will already have been done by the time you get here. Thus, if you found the defendant not guilty of simple assault, then that element will be missing and you will find him not guilty of assault by prisoner.

N.T. Vol. III at 147.

## VI

Appellant argues that his constitutional rights were violated in that a non-attorney district justice conducted his preliminary hearing. His application to quash the transcript was denied by the trial court.

Appellant's argument in essence attacks the entire district justice system in Pennsylvania, since most of those individuals are not attorneys. This is not to say that they are unschooled in the law; all district justices are subject to extensive educational requirements.[8]

Regardless of their training, the fact remains that most district justices are not members of the bar. Several state courts have dealt with the issue of non-attorney judges, with conflicting results.[9] However, the United States Supreme Court has recently ruled in a case that the use of lay judges in misdemeanor trials does not violate due process, even if there is a possibility of imprisonment. *North v. Pussell,* 427 U.S. 328, 96 S.Ct. 2709, 49 L.Ed.2d 534 (1976). The Court reasoned that defendants were adequately protected in that a trial de novo before an attorney judge was available. Since this rule now applies to trials, it must

**8.** The Magisterial District Reform Act of 1976, July 15, P.L. 1014, No. 204, § 502, 42 P.S. § 2502 provides that before taking office, all district justices must complete a certified course of training and instruction and must pass an examination; completion of a yearly continuing education program is required by 42 P.S. § 2506. These courses are administered by a seven-member administrative board comprised of three attorneys, three district justices, and one lay citizen.

**9.** *See, e. g., People v. Skrynski,* 42 N.Y.2d 218, 397 N.Y.S.2d 709, 366 N.E.2d 799 (1977) (lay judges may preside in town and village courts in determining minor criminal issues); *Shoemaker v. State,* 375 A.2d 431 (Del.1977) (district justices system similar to Pennsylvania's not violative of due process since appeal to attorney judges is available); *Kansas v. Boone,* 218 Kan. 482, 543 P.2d 945 (1975) (defendant's due process rights not infringed when preliminary hearing conducted before non-attorney judge). *Cf. Gordon v. Justice Court for Yuba Judicial District,* 12 Cal.3d 323, 115 Cal.Rptr. 632, 525 P.2d 72 (1974) (permitting non-attorney judges to preside over misdemeanor trials violates due process); *State v. Dunkerley,* 365 A.2d 131 (Vt.1976) (first degree murder trial held before a group of lay witnesses who adjudicated guilt violated due process).

certainly extend to preliminary hearings, wherein the only issue decided is whether a prima facie case against the defendant has been made out. *Commonwealth v. Mullen,* 460 Pa. 336, 333 A.2d 755 (1975). A preliminary hearing is not a trial, and the presiding officer's duty is very limited. Guilt or innocence is not determined; that decision is made in a subsequent trial, where the burden of proof on the Commonwealth is much greater.

Recognizing the differences between preliminary hearings and trials, and noting the *North* decision, we cannot agree with appellant that his appearance before a non-attorney district justice violated his constitutional rights. The motion to quash was properly denied.

## VII

Appellant's next argument must be premised by a procedural note. He argues that the lower court erred in denying his demurrer to the charges of aggravated assault and assault by life prisoner, citing insufficiency of the evidence. The lower court refused to deal with the correctness of the denial, relying upon *Commonwealth v. Ilgenfritz,* 466 Pa. 345, 353 A.2d 387 (1976). That case did state that when a defendant elects to put on a defense following an adverse ruling on a demurrer, he may not question the correctness of the ruling on appeal. 466 Pa. at 347, 353 A.2d at 388. However, the *Ilgenfritz* court did go on to consider the issue of sufficiency of the evidence. This procedure has been followed in subsequent cases:

> Therefore as in *Ilgenfritz,* supra, we will treat [defendant's] challenge as one to the sufficiency of the evidence rather than one challenging the correctness of the trial court's rulings on the demurrers.

*Commonwealth v. Dussinger,* 478 Pa. 182, 187, 386 A.2d 500, 502 (1978). *See also Commonwealth v. Smith,* 478 Pa. 391, 386 A.2d 989 (1978). *Commonwealth v. Benaglio,* 254 Pa.Super. 100, 385 A.2d 544 (1978). Since appellant's brief does argue sufficiency, we will consider that issue.

██ The standard for measuring sufficiency of the evidence in Pennsylvania has been repeated many times; upon review, an appellate court must view all the evidence in a light most favorable to the verdict winner, giving the Commonwealth (the verdict winner here) the benefit of all reasonable inferences arising therefrom. *Commonwealth v. McFadden,* 448 Pa. 146, 292 A.2d 358 (1972). Appellant's contention is thus that the evidence presented was insufficient to support a finding that appellant had inflicted serious bodily injury upon his victims, a necessary element for charges of both aggravated assault and assault by life prisoner.[10] Serious bodily injury is defined to mean "bodily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." 18 Pa.C.S.A. § 2301.

██ Appellant cites the dissenting opinion of Judge SPAETH in *Commonwealth v. Alexander,* 237 Pa.Super. 111, 346 A.2d 319 (1975) in support of his argument that a fractured nose, caused by a single punch to the face, does not constitute serious bodily injury. We note that our supreme court has accepted the reasoning of the dissenters and has decided that the infliction of that injury was not aggravated assault. *Commonwealth v. Alexander,* 477 Pa. 190, 383 A.2d 887 (1978). However, *Alexander* does *not* stand for the proposition that a blow to the head can never be considered an aggravated assault. The court emphatically stated that:

> we cannot say that the mere fact that a punch was delivered to that portion of the body is sufficient *without*

10. The definition of aggravated assault is contained in 18 Pa.C.S.A. § 2702(a):
> A person is guilty of aggravated assault if he:
> (1) attempts to cause serious bodily injury to another, or causes such injury . . .
> The definition of assault by life prisoner, 18 Pa.C.S.A. § 2704, speaks in terms of aggravated assault "by any means of force likely to produce serious bodily injury . . ." *See* footnote 3, supra.

*more,* to support a finding that appellant intended to inflict serious bodily injury (emphasis in original).

477 Pa. at 194, 383 A.2d at 889.

It is clear that the assault here went far beyond the single blow delivered in *Alexander.* Witnesses testified that appellant approached Mr. Moskal from behind and struck him at least five or six times, knocking him off a chair and rendering him unconscious. N.T. Volume II, pages 28–31. That victim suffered a continuing loss of hearing, depth perception, and equilibrium; he required two months of physical therapy; he must take medication indefinitely to reduce pain and stabilize his equilibrium; and he was put out of work for a period in excess of six months. The other victim, Mr. Bello, received less serious injuries, but he too was hospitalized for several days. We are convinced that the assault of Mr. Moskal caused "protracted loss or impairment of the function of [a] bodily member or organ." The evidence presented by the Commonwealth was more than sufficient to support a finding of serious bodily injury.

■ Appellant also questions the sufficiency of evidence used to establish that he was serving a life sentence. We find this argument meritless, because it was clearly shown that he was imprisoned for life. The custodian of the records at Graterford testified, from the inmate file of one Ronald James Dessus, inmate number H–6384, that he (Dessus) was incarcerated for life. We fail to see what other proof is necessary to show that appellant was in fact a life prisoner.

## VIII

■ Appellant challenges the lower court's refusal to allow individual voir dire regarding racial prejudice. He contends that because he is black and because the victims are white, it was necessary to question each prospective juror about any possible bias.

The law in our state provides that, except in capital cases (where individual voir dire must be used), the manner of voir

dire is within the discretion of the trial judge. Pa.R.Crim.P. 1106(e). This discretion will only be reversed if a "likelihood of prejudice [is created] so as to render the trial judge's decision to conduct collective voir dire an abuse of discretion." *Commonwealth v. Howard*, 248 Pa.Super. 246, 251, 375 A.2d 79, 82 (1977). The trial judge determined that no exceptional circumstances existed here. There had been no pretrial publicity, and the case had "no visible racial overtones other than that defendant was black and the victims were white." Lower court opinion at 8. Any possible racial prejudices would have been exposed by the three questions that were asked on collective voir dire.[11]

Appellant presents no convincing evidence that the trial judge abused his discretion nor does he show that this was an exceptional case wherein individual voir dire should have been conducted. We find no error.

## IX

Appellant raises an issue of selective prosecution in violation of his right of equal protection. He contends that the trial court erred in quashing a subpoena which was issued directing the production of all prison records relating to all assaults within the prison over a four year period. He argues that this quashing of the subpoena prevented him from preparing a defense of selective enforcement of the laws.

▮ There is nothing in appellant's brief to convince us that his proposed "defense" is anything more than mere conjecture. No allegations are made that dispositions of

11. Three questions specifically addressed to racial prejudice were asked on collective voir dire: 1) would the fact that the defendant is black tend to influence your impartiality; 2) would the fact that the defendant is black and the victims are white in any way affect your judgment in the case; and 3) is there anyone who would tend to believe the testimony of the white victims or white witnesses over the testimony of the black defendant or black witnesses simply because of the fact that one is white and one is black. N.T. July 13, 1976, at 21–22.

assault incidents were made on the basis of racial or religious factors. A similar request was denied in *United States v. Ahmad,* 347 F.Supp. 912 (M.D.Pa.1972). The court remarked that:

> before such a drastic procedure is initiated, it is incumbent upon the defendants to present evidence from which at least an inference of the use of improper standards can be drawn.

347 F.Supp. at 928.

We agree that the subpoena was properly quashed.

## X

It is further contended by appellant that his trial counsel was ineffective in not personally subpoenaing the prison records. Again, we cannot say that the course chosen by counsel had no reasonable basis to effectuate his client's interest. *Commonwealth ex rel. Washington v. Maroney,* 427 Pa. 599, 235 A.2d 349 (1967). One subpoena had already been quashed on the merits. It was reasonable for counsel to believe that any other attempts to subpoena the records would have been equally fruitless. He did in fact concede during the pretrial hearing that "that evidence is beyond my power to subpoena." N.T. July 7, 1976, at 30.

## XI

The final argument raised by appellant is that he was denied due process by the lower court's refusal to permit examination of the Montgomery County jury selection process. Juries in that county are selected exclusively from county voter registration lists. He contends that this process systematically discriminates against blacks because they fail to register in proportion to their population in the community.

This argument has been raised many times before, and the Supreme Court of Pennsylvania has recently decided the

issue. In *Commonwealth v. Jones,* 465 Pa. 473, 350 A.2d 862 (1976), the justices decided that:

> '[u]se of [voter registration] lists as the sole source of names for jury duty is constitutionally permissible unless this system results in the systematic exclusion of a "cognizable group or class of qualified citizens." ' And a group of persons who have failed to register to vote has never been considered to constitute a 'cognizable group.'

465 Pa. at 479, 350 A.2d at 866.

The court continued on to note the practicality of the use of a voter list, and its acceptance on the federal level.[12] It concluded the issue by holding that:

> . . . while a fairer cross section of the community may have been produced by a selection system utilizing the general population of Delaware County, the jury selection system's sole reliance upon ·voter registration lists may not be considered constitutionally impermissible.

465 Pa. at 480, 350 A.2d at 866.

We hold, therefore, that the lower court correctly dismissed appellant's challenge following a discussion of the issue at the pretrial hearing. N.T. July 7, 1976 at pages 7–11. There is no need for us to remand for an evidentiary hearing, *Commonwealth v. Jones,* 452 Pa. 299, 304 A.2d 684 (1973), as the record below is complete and the mandate of our supreme court is clear.

Finding all of appellant's arguments meritless, judgment of sentence is affirmed.

CERCONE, J., concurs in the result.

WATKINS, former President Judge, and HOFFMAN, J., did ·not participate in the consideration or decision of this case.

---

12. Under the Jury Selection and Service Act of 1968, 28 U.S.C. § 1863(b)(2), use of voter registration lists to select federal grand and petit juries is specifically mandated.